331 P.2d 270

Alfred J. HUBBLE, Plaintiff-Respondent,

v.

Lloyd RECORD, Defendant-Appellant,

Smith Frozen Foods of Idaho, Inc., Defendant.

No. 8677.

Supreme Court of Idaho.

Oct. 29, 1958.

Daniel A. Quinlan, Jerry V. Smith, Lewiston, for appellant.

Paul C. Keeton, Lewiston, for respond-
ent.

Cox, Ware & Stellmon, Lewiston, for defendant Smith Frozen Foods of Idaho, Inc.

PORTER, Justice.

This action was commenced to recover damages for personal injuries received by respondent in an accident occurring while he was engaged in helping to harvest green peas. At the close of the evidence at the trial, a motion for a directed verdict made by defendant, Smith Frozen Foods of Idaho, Inc., was by the court sustained and the action in effect dismissed as to such defendant. The jury rendered a verdict in favor of respondent and against appellant, Lloyd Record, in the sum of $42,833. Judgment was entered in accordance with the verdict.

Appellant, Lloyd Record, made a motion for new trial upon the ground, among other grounds, that the verdict was so excessive as to show passion and prejudice on the part of the jury. The trial court reduced the amount of the judgment by $10,000 to the sum of $32,833 and denied the motion for new trial. Appellant has appealed from the judgment and from the order denying the motion for new trial. No appeal has been taken by respondent from the dismissal of the defendant, Smith Frozen Foods of Idaho, Inc., nor from the order of the trial court reducing the judgment by $10,000.

Much of the factual background of this case has once before been presented to this court in an action wherein different parties were involved. See Hubble v. Perrault, 78 Idaho 448, 304 P.2d 1092.

In the year 1955, defendant, Smith Frozen Foods of Idaho, Inc., leased a parcel of farm land located near Lewiston from one Ellis Gibbs and raised thereon a crop of green peas. In connection with the harvesting of such crop, appellant contracted to haul the pea vines in his trucks from the field to the threshing machines called viners. One Alex Perrault contracted to furnish the laborers to pitch the pea vines into the viners. On July 18, 1955, Alex Perrault hired respondent in Spokane, Washington, to work as a pea pitcher. On July 19, respondent was taken to the leased land of Smith Frozen Foods of Idaho, Inc., on the Ellis Gibbs farm and assigned as a pea pitcher at a viner.

Appellant had several trucks engaged in hauling vines from the fields to the viners, some of which trucks were fitted with power driven mechanical sweeps to push the pea vines out of the trucks. The sweep was made of iron lattice work and was about three feet high and as wide as the truck bed. The sweep set on two runners and had cables running on each side back to a drum on the rear of the truck which was driven by a power takeoff operated from the cab of the truck. There was a

chalk mark on the inside of the body of the truck a few inches from the rear which could be seen from the cab and the driver of the truck was supposed to stop the sweep by disengaging the power when the sweep reached the chalk mark. There were no other means employed to stop the sweep and prevent its going out of the back of the truck. This device was homemade and was installed in the trucks by appellant for the first time in the year 1955.

After respondent had been at work about two hours, a truck of appellant, equipped with a sweep, unloaded its pea vines at the viner where respondent was employed. The truck then pulled away from the pea vines for a distance of several feet. Respondent took up a position between the pea vines and the truck with his back to the truck and commenced pitching the pea vines into the viner. He was four or five feet from the back of the truck. The truck started up and the sweep came off the back end of the truck with a "terrific whack" and struck respondent, inflicting severe and permanent injuries upon him.

By his assignments of error, appellant makes three contentions; first, that the evidence does not show any negligence on the part of appellant; second, that the evidence shows contributory negligence as a matter of law on the part of respondent; and, third, that the verdict is so excessive as to show passion and prejudice on the part of the jury.

Appellant has not made any argument either in his brief or orally to sustain his contention that the evidence does not show any negligence on his part. Likewise, respondent, following appellant's brief, does not discuss such issue. Accordingly, we dispose of such issue by saying that the evidence is ample and substantial in support of the jury's finding of negligence on the part of appellant.

In support of his second contention that this court should pass upon the question of contributory negligence as a matter of law in this case, appellant cites Bell v. Carlson, 75 Idaho 193, 270 P.2d 420; Larsen v. Jerome Cooperative Creamery, 76 Idaho 439, 283 P.2d 1096; and Rosevear v. Rees, 77 Idaho 270, 291 P.2d 856. These cases recognize that contributory negligence is generally a fact for the jury but hold that where there is no other reasonable interpretation of the evidence except that plaintiff was guilty of negligence which proximately caused or contributed to his injury, then the question of contributory negligence becomes one of law for the court.

The question of contributory negligence is for the jury or the court as a trier of the facts and never one of law where the evidence is such that the minds of reasonable men might differ or where different conclusions might be reasonably reached by different minds on such question. Ford v. Connell, 69 Idaho 183, 204 P.2d 1019. This

rule has been repeatedly and consistently adhered to in our decisions. See Wilde v. Hansen, 70 Idaho 8, 211 P.2d 153; Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651; Elliott v. Lee, 71 Idaho 242, 229 P.2d 1000; Stowers v. Union Pacific R. Co., 72 Idaho 87, 237 P.2d 1041; Jackman v. Hamersley, 72 Idaho 301, 240 P.2d 829; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971; Benson v. Brady, 73 Idaho 553, 255 P.2d 710.

■ Contributory negligence is a matter of defense and the burden is upon defendant to prove same unless such negligence appears from the complaint or from the evidence of plaintiff. Section 5–816, I. C.; Hooton v. City of Burley, supra.

■ Appellant contends that respondent, by taking up a position immediately behind the truck and with his back thereto and commencing to pitch the pea vines into the viner, negligently placed himself in a position of danger and did not exercise ordinary care to protect himself from such danger; and that his acts as a matter of law constituted contributory negligence.

In Splinter v. City of Nampa, 70 Idaho 287, at page 295, 215 P.2d 999, at page 1004, 17 A.L.R.2d 665, this court approved the following statement:

"'As it generally is expressed, a plaintiff will not be held to have been guilty of contributory negligence if it appears that he had no knowledge or means of knowledge of the danger, and conversely, he will be deemed to have been guilty if it is shown that he knew or reasonably should have known of the peril and might have avoided it by the exercise of ordinary care.'"

In Hooton v. City of Burley, 70 Idaho 369, at page 375, 219 P.2d 651, at page 654, this court said:

"It is a general rule of law that when one knows of a danger brought about by the negligence of another, and understands and appreciates the risk therefrom and voluntarily exposes himself to such danger, he is precluded from recovering for resulting injuries.

\*     \*     \*     \*     \*     \*

"However, an injured person's knowledge of the physical characteristics of the offending instrumentality or condition does not of itself constitute contributory negligence. It is the appreciation of, or the opportunity to appreciate the peril in an instrumentality or condition, rather than the knowledge of the physical characteristics that bars a plaintiff from recovery for negligence."

See also, Benson v. Brady, supra.

The evidence in this case shows that respondent had only been at work for about

two hours. It does not disclose that he was familiar with or had ever examined a truck equipped with a sweep installation, or had knowledge of any danger in standing behind such a truck. The question of contributory negligence in this case was one of fact for the jury and is not a question to be decided as a matter of law by this court.

The third contention of appellant is that the verdict of the jury was so excessive and so disproportionate to the damages sustained by respondent as revealed by the evidence as to show that the entire verdict was tainted by passion and prejudice on the part of the jury, and that a new trial should be granted. The evidence shows that at the time of the accident respondent was 64 years of age; that he was a laboring man; that during the Second World War he had been in the military service in Canada and in the United States; that he had not been generally employed during the past four or five years but had been mostly living on a small pension; and that he was physically capable of performing gainful work as a laborer.

The medical evidence discloses that respondent was in the hospital from July 19 to October 6, 1955; and after his injuries was unemployable. His attending physician testified as to the extent of the injuries of respondent as follows:

"Q. Now, from your examination of him, doctor, both initially and thereafter, were you able to conclude, as a medical expert, what injuries he suffered on account of this accident? A. Well, his injuries throughout the course of his care were somewhat complex, described as laceration of his scalp which was extensive over the occipital region of his skull.

"Q. Is that back? A. Back of his head, with concussion cerebral, severe; a crushing injury to his chest with fracture of ribs 2, 3, 4, 5, 6 and 7 left, fracture of ribs 7, 8, 9, 10 right; a fracture, comminuted upper tibia right, involving both tibial plateaus and the knee joint; fracture of his left side cervical vertebrae 1, 2 and 3; compression fracture thoracic vertebrae, multiple; and shock, moderately severe.

"Q. Doctor, when you spoke of the fractures of the three cervical vertebrae which you described, would those be here in the neck? A. That's right.

"Q. When you spoke of multiple thoracic fractures, would those be bones of the spine in the middle of the back? A. That would be the spine in the, more or less in the area where the ribs are involved, the chest, what we consider the chest.

"Q. What about his knee injury, doctor? Could you describe what the tibia is to the jury and how these

fractures were? A. The tibia is the larger bone between the knee and the angle and at its upper end it is sort of flat, plateau-like bone and both of those plateaus were involved in the fracture and the fracture extended into the joint."

The rule is well established in this jurisdiction that an appellate court should never interfere with the verdict of a jury because of the amount of the award except in cases where an abuse of discretion is clearly apparent. Hepp v. Ader, 64 Idaho 240, 130 P.2d 859; Gardner v. Hobbs, 69 Idaho 288, 206 P.2d 539, 14 A.L.R.2d 478; Garrett v. Taylor, 69 Idaho 487, 210 P.2d 386.

The amount of a verdict for damages will not be disturbed on appeal in the absence of a showing of bias or prejudice or other irregularity. Gorton v. Doty, 57 Idaho 792, 69 P.2d 136; O'Connor v. Meyer, 66 Idaho 15, 154 P.2d 174; Checketts v. Bowman, 70 Idaho 463, 220 P.2d 682; Koch v. Elkins, 71 Idaho 50, 225 P.2d 457; Hayward v. Yost, supra.

In Luther v. First Bank of Troy, 64 Idaho 416, at page 423, 133 P.2d 717, at page 720, this court said:

"While the amount of damages is peculiarly for the jury to determine under the facts of each particular case, this court can nevertheless determine whether or not the damages are so large as to indicate the influence of passion and prejudice in the verdict. If the verdict is excessive but does not indicate such influence of passion and prejudice as to taint the entire verdict, that is, indicate that the rendering of any verdict against the defendant was because of passion and prejudice, merely that the verdict is excessive in amount, this court has reduced the amount, making its acceptance optional. (Citing Cases) If, however, passion and prejudice evidently entered into the jury's deliberations not only as to the amount of the verdict but as to contributing to its returning any verdict at all, the verdict is vitiated and the only constitutional protection is to grant a new trial. (Citing Cases)."

This statement was reiterated and approved in Summerfield v. Pringle, 65 Idaho 300, 144 P.2d 214.

The trial judge upon the motion for new trial found that the full amount of the award was not supported by the evidence and reduced the verdict by the sum of $10,-000. However, he did not find that the verdict was the result of passion and prejudice which so tainted the entire verdict that a new trial was required. His decision will not be disturbed in the absence of an abuse of his discretion. Checketts v. Bowman, supra.

In the instant case appellant depends alone upon the excessiveness of the verdict to show passion and prejudice. There is no other evidence in the case indicating the presence of passion or prejudice on the part of the jury. The finding of the trial judge of excessiveness in the verdict is not based upon the presence of passion and prejudice on the part of the jury, but upon the position that the evidence of damages is insufficient to sustain the entire amount of the verdict, and requires a reduction in the amount of the verdict instead of the granting of a new trial.

In determining whether the judgment as it now stands is excessive it would be of little help to attempt to compare such judgment with the amounts of verdicts granted by juries and approved by the courts in cases from other jurisdictions. Garrett v. Taylor, supra. The decisions are almost endless in which the courts have considered and determined the question of excessiveness of verdicts. In Pearson v. Hanna, 145 Me. 379, 70 A.2d 247, 16 A.L.R. 2d 1, the court laid down the rule that an award of damages, though liberal, will not be set aside as excessive where it is not disproportionate to the injuries suffered and it does not appear that the jury acted under bias, prejudice, improper influence or some mistake of fact or law. The decision in such case as reported in 16 A.L.R.2d 1, is followed by an annotation commencing on page 3 and running to page 390, citing cases and discussing excessiveness of damages in actions for injuries not resulting in death for the years 1941 to 1950.

No complaint is made by appellant to the instructions of the court instructing the jury as to the elements of damage to be considered in arriving at a verdict. It was for the jury to estimate the damages as best it could under the evidence. O'Connor v. Meyer, supra.

■ The depreciation which has taken place in the value of the dollar, the increased cost of living, the changing economic conditions and the tendency of juries to award and the courts to approve verdicts of larger amounts than formerly, are all matters for consideration in passing upon the amount of a verdict attacked as excessive. Garrett v. Taylor, supra; Hooton v. City of Burley, supra.

■ The verdict of the jury in this case is not so disproportionate to the injuries suffered by respondent as to show on its face the presence of passion and prejudice and to require the granting of a new trial. Nor is the judgment as modified by the action of the district court, so disproportionate to the damages of respondent shown by the evidence as to require a further reduction in the judgment. The judg-

ment of the district court is affirmed. Costs awarded to respondent.

TAYLOR, SMITH and McQUADE, JJ., and SPEAR, D. J., concur.

KEETON, C. J., not participating.