429 P.2d 397

**James W. BLAINE, Plaintiff-Respondent,**

v.

**John W. BYERS, Boise Cascade Corporation, a corporation, and Boise National Leasing, Inc., a corporation, Defendants-Appellants.**

No. 9876.

Supreme Court of Idaho

June 22, 1967.

Richards, Haga & Eberle, Boise, for appellants.

Coughlan & Imhoff, Boise, for respondent.

SPEAR, Justice.

Appellants John W. Byers, Boise Cascade Corporation and Boise National Leasing Corporation appeal from a judgment awarding respondent James W. Blaine $25,000 damages in a personal injury action following a jury trial in the district court for Ada County. Liability of the appellants is not disputed. The central issue presented by the appeal is whether the trial judge should have entered judgment on the jury verdict of $25,000, which appellants assert was an excessive award totally unsupported by the evidence adduced at trial.

On December 1, 1964, respondent Blaine was injured in a traffic accident in a rear-end type collision with a truck driven by John W. Byers for the Boise Cascade Corporation. Boise National Leasing Corporation owned the two-and-a-half ton truck which it had leased to Boise Cascade. The accident occurred at the intersection of Phillipi Street and Overland Road in the city of Boise. The respondent's station wagon was stopped behind another vehicle, which had stopped at the intersection and was waiting for traffic before making a left-hand turn onto Phillipi Street. Byers was proceeding meanwhile along Overland toward the intersection, saw the stopped vehicles up ahead, but was unable to stop his truck, because of the wet pavement that day, in time to avoid the collision with the Blaine automobile. The record indicates that while Byers was driving within the speed limit, he was probably not sufficiently attentive to the traffic immediately in front of him on Overland.

The impact of the collision propelled respondent's automobile into the first vehicle which itself was pushed forward into the intersection. Having anticipated the impending collision, respondent was able to brace himself against the steering wheel in a semi-crouched position; however, on impact, he was thrown back against the front seat with sufficient force so that his hat was hurled to the back of his station wagon. Though shaken, respondent at the scene of the accident did not appear injured. Fortunately, neither the passengers in the first vehicle nor the truck driver were hurt. However, shortly after the accident respondent began to feel soreness and pain in his neck, shoulders and lower back; and respondent contacted his personal physician, Dr. W. D. Springer, within a few hours following the accident.

Dr. Springer immediately recommended X-rays which were taken that same day. The next day respondent was hospitalized. Examination revealed that, as an immediate consequence of the accident, respondent had sustained a muscular strain of the neck and lower back resulting from a "whiplash" type injury. The X-rays further revealed unsuspected pre-existing advanced degenerative arthritis along the entire spinal column, particularly in the vertebrae of the neck. This pre-existing arthritic condition was asymptomatic prior to the accident, and respondent was able to do heavy manual labor without associated pain or disablement. Coincidental with the injury sustained to the arthritic area, the arthritis flared up and was greatly aggravated by the accident, causing much of the discomfort experienced by the respondent. The sprain or whiplash injury received in the collision, superimposed on the previously asymptomatic arthritic condition, was described as having caused the condition to rapidly progress and become disabling.

Because of recurrent neck and back pain suffered by respondent, Dr. Springer called in several orthopedic specialists, among whom was Dr. Richard Gardner. Respondent was hospitalized for eleven days. While at the hospital respondent's neck and lower back were placed in traction every day for as long a period as possible. Additionally, respondent was administered pain-killing drugs and given heat treatments. On his discharge from the hospital, respondent was advised not to engage in heavy work of the type in which he had previously engaged on his ranch. He was also advised to wear a corset and stiff collar for support. Daily exercises were prescribed and respondent was supplied a collar with fifteen-pound weights, the use of which was recommended at least three times a day for periods of one-half hour each.

December 24, 1964 respondent was re-admitted to the hospital. On that day respondent felt severe pain in his right arm which was not alleviated by the codeine pills prescribed for the pain in his back and neck. He described the pain as if someone had a bicycle pump and was pumping up the right arm until it was about to burst. This abnormal feeling in the arm was described by Dr. Gardner as probably a neuritis or irritation of a nerve emanating from the cervical spine. This symptom he traced to the accident. On this occasion respondent was hospitalized for approximately seven days and received treatment essentially similar to that which occurred on his first hospitalization.

Thereafter, respondent was admitted to the hospital on some five other separate occasions, either because of pain in the neck and lower back or the neuritis in the right arm. On each hospitalization, respondent was administered treatment of the same nature, i. e., traction, hot baths, therapy treatments, and the administration of pain-killing drugs. The duration of the subsequent hospitalizations varied, but was generally for a relatively short period. The consensus of medical opinion was that respondent had reached a plateau of improvement with respect to the treatment of the condition. Dr. Gardner testified he did not know what more could be done other than continue the intermittent tractions, occasional application of warm towel packs, use

of the collar for the neck when necessary and daily exercise as previously had been prescribed.

The evidence discloses that immediately after the accident, respondent's pre-existing arthritic condition was greatly aggravated, causing considerable pain. This has leveled off now, though the prognosis in such cases is not good, and the condition can be expected to worsen gradually. There is not much pain in the lower back if respondent follows a regimen of a relatively minor amount of work together with daily exercises. The respondent still suffers a constant dull pain in the back of the neck, consistent with this type of injury, but most probably related to the arthritic condition, and not a residual strain of the accidental injury received. The pain in the arm will be minimized if respondent refrains from engaging in excessive physical activity. However, while respondent has improved since immediately following the accident, his condition is something he will have to learn to live with. The present disability is described as permanent in nature, and the treatment and exercise which has been prescribed for respondent most probably will have to be continued indefinitely.

Through 1958 respondent had engaged in the general practice of law in Boise on a full time basis. However in late 1958, respondent moved to Owyhee County where, together with one Cox, he has operated a 3700-acre ranch. Respondent additionally serves as prosecuting attorney for Owyhee County. This position requires about two days a week throughout the year for which he is paid an annual salary of $3800. Principally respondent devotes his time and energy to the ranch on which both Cox and respondent now live with their families. The respondent, consequently, is dependent largely upon the income production of the ranch. However, both prior to and following the accident, the ranch was not a money-making operation. Only 250 acres are presently under cultivation and Cox and respondent have B.L.M. rights to only 450 head of cattle. Even respondent's yearly salary of $3800 has not offset the cash losses incurred so that there had been a negative cash inflow even before the accident.

Prior to the December 1, 1964 accident, respondent regularly performed such heavy manual labor on the ranch as irrigating the land, stacking hay, driving a tractor and riding herd on cattle. There was no hired help, although respondent's 21-year-old stepson was able to assist. The onset of symptomatic arthritis after the accidents makes ranch work difficult for respondent, who must now carefully limit his amount of physical activity. On the other hand, respondent claims his present disability would make his return to the full-time practice of law unfeasible, since he believes he can not sit in one place for any length of time. He is convinced the arthritic pain would preclude the necessary concentration required for full time practice.

This personal injury action was filed by the respondent on June 9, 1965. Appellants John W. Byers, Boise Cascade Corporation and Boise National Leasing Company were named defendants, and it was asserted their negligence proximately caused the accident of December 1, 1964. In his complaint respondent alleged he has incurred $1,600 in doctor and hospital expenses up to that time; that he will incur medical expenses in the future which were not known to him; that his automobile was damaged in the sum of approximately $300; and that he sustained permanent injuries attendant with pain and suffering for which he is entitled to general damages in the amount of $35,000. The complaint did not allege or seek recovery for lost income or lost earning power.

Following submission of the case to the jury, a verdict awarding respondent total damages of $25,000 was returned. After entry of the judgment, appellants moved for a new trial on the grounds the award was excessive and not supported by the evidence. With respect to appellants John W. Byers and Boise Cascade Corporation, the motion for a new trial was denied. While agreeing the verdict was exceedingly generous and more than he would have awarded had he

been the trier of fact, the trial judge ruled he could not say the amount of damages was excessive, necessarily contrary to the evidence or the result of passion and prejudice. With respect to appellant Boise National Leasing Corporation, the motion for a new trial was denied after respondent agreed to a remittitur of the judgment against said corporation in excess of $5,000, the limit of Boise National Leasing Corporation's statutory liability for personal injuries under I.C. § 49–1404.

Appellants by their first assignment of error have alleged that the trial judge failed to properly exercise his discretion with respect to the question of an excessive award when, in denying their motion for new trial, he reported that he could not as a *matter of law* say the amount of damages was excessive. The appellants' contention in this regard is that by this ruling the trial judge evidenced he misconstrued the power of review of a trial court over an award of damages, since the Idaho cases make plain that the trial judge is not restricted "as a matter of law" in considering excessive verdicts.

The responsibilities and obligations of the trial court with respect to the oversight or control of excessive verdicts was outlined by this court most recently in Mendenhall v. MacGregor Triangle Company, 83 Idaho 145, 150–151, 358 P.2d 860, 862–863, wherein it was stated:

"The determination of the question of excessiveness of an award by the jury first requires of the trial judge an examination as to the sufficiency of the record to sustain the award; then if he does determine the record is insufficient to sustain the award, he must next determine the amount of the award the record does sustain. * * * While such a determination in the first instance has been recognized repeatedly by this court as peculiarly within the province of the jury, (cases cited), yet the trial court has the responsibility to weigh the evidence and make the determination whether the evidence supports the verdict."

Continuing, the opinion quoted both the earlier Idaho decision, Checketts v. Bowman, 70 Idaho 463, 220 P.2d 682, and the case of Bond v. United Railroads, 159 Cal. 370, 113 P. 366, 48 L.R.A., N.S., 687 (1911), cited by the court in Checketts, in comparing the respective responsibilities and powers of review of the trial court and the appellate court, as follows:

" 'The remedy for excessive verdicts rests largely with the trial judge, whose duty it is to carefully weigh the evidence and not allow a verdict to stand for a greater amount than the evidence will reasonably justify (citing cases).

\*    \*    \*    \*    \*    \*

" ' * * * We have cause to fear that the trial courts sometimes act on the theory that they can shift the responsibility in this matter to the appellate court, and that an excessive verdict can be corrected on appeal. This is a mistake. Our power over excessive damages exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury (citing cases). Practically, the trial court must bear the whole responsibility in every case.' "

■ Amount of damages is a question of fact, which is for the jury in the first instance and secondly for the trial judge on a motion for a new trial; and the trial judge, in this regard, has been likened to a thirteenth juror. See Adams v. Pacific Motor Trucking Co., 172 Cal.App.2d 505, 342 P.2d 351 (1959); Duvall v. T.W.A., 98 Cal.App.2d 106, 219 P.2d 463 (1950). Cf. State ex rel. Rich v. Sweet, 82 Idaho 191, 351 P.2d 230; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971; Koch v. Elkins, 71 Idaho 50, 225 P.2d 457. The rule that where there is any competent evidence, though conflicting, to sustain the verdict, the verdict will not be set aside has no application to a trial court in passing upon a motion for a new trial. Grimm v. Harper, 84 Idaho 220, 370 P.2d 197; Coast Transport v. Stone, 79 Idaho 257, 313 P.2d 1073. See also Warren

v. Eshelman, 88 Idaho 496, 401 P.2d 539. Rather the discretion with which the trial judge is entrusted is a sound legal or judicial discretion, and the trial court may grant a new trial when it is satisfied the verdict is not supported by, or is contrary to, the evidence, or is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice. Warren v. Eshelman, supra; Grimm v. Harper, supra; Sanchotena v. Tower Co., 74 Idaho 541, 264 P.2d 1021.

■ On the other hand, however, the trial judge should not substitute his opinion on the amount of damages for that of the jury. Checketts v. Bowman, supra. Additionally, the general rule which prevails in this jurisdiction is that a motion for a new trial should not be granted unless it appears that a different result would follow a retrial. See Consumers Credit Co. v. Manifold, 65 Idaho 238, 142 P.2d 150, and cases therein cited.

■ While agreeing with appellants that the trial judge had the responsibility and obligation to actually weigh the evidence to determine whether the record reasonably supported the assessment of damages in this case, we find erroneous their conclusion, based upon statements taken out of context from the trial court's memorandum decision, that the trial judge abdicated this responsibility. On a complete reading of the memorandum decision it becomes clear that the judge was both aware of his responsibility and exercised his obligation to determine whether the award was reasonably supported by the record consistent with the authorities above cited. Of particular relevance were the remarks of the trial judge that he did not see any basis upon which he could substitute his judgment for that of the jury (Checketts v. Bowman, supra) and that he did not see any particular reason to believe a new jury or new trial would necessarily award a different sum (Consumers Credit Co. v. Manifold, supra), which fairly indicate the trial judge properly weighed the

evidence and did not erroneously restrict his consideration to that of law only.

■ Also this court is firmly committed to the rule that a trial court possesses a discretion to be wisely exercised in *granting or refusing to grant* a new trial and that such discretion will not be disturbed on appeal unless it clearly appears to have been exercised unwisely and to have been manifestly abused. (Emphasis supplied.) Sanchotena v. Tower Co., supra.

For these reasons we find the appellants' first assignment of error untenable.

■ Secondly, appellants assert the evidence at any event is clearly insufficient to support the verdict of $25,000 awarded respondent and for that reason this court should remand the case to the district court for a redetermination of the damages to which respondent is reasonably entitled. The power of this court over excessive damages, as previously mentioned, "exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury." Mendenhall v. MacGregor Triangle Company, supra. See also Gonzales v. Hodsdon, 91 Idaho 330, 420 P.2d 813; Barry v. Arrow Transportation Company, 83 Idaho 41, 358 P.2d 1041; Hubble v. Record, 80 Idaho 403, 331 P.2d 270; Brown v. Arrington Const. Co., 74 Idaho 338, 262 P.2d 789; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971; Koch v. Elkins, 71 Idaho 50, 225 P.2d 457; Checketts v. Bowman, supra; Garrett v. Taylor, 69 Idaho 487, 210 P.2d 386; Gardner v. Hobbs, 69 Idaho 288, 206 P.2d 539, 14 A.L.R.2d 478. From an examination of the record, it may fairly be concluded, as the district court determined, that the jury could find that the accident which respondent sustained on December 1, 1964, so aggravated his pre-existing back condition that it caused him severe and permanent injuries which would thereafter seriously limit his physical activity and consequently his participation in the operation of the ranch. While we are inclined to agree that the award is generous, nonetheless, we do not feel there was such an abuse

of discretion as to warrant our interference with the verdict of the jury which was fairly rendered. Having concluded that the trial court properly exercised its supervisory power over excessive verdicts, the determination by that court that the verdict was not excessive, is entitled to some weight in this court. Barry v. Arrow Transportation Company, supra; Hayward v. Yost, supra; Koch v. Elkins, supra; Garrett v. Taylor, supra. The verdict neither is excessive as a matter of law nor tainted with passion or prejudice such as would require either an order of remittitur or new trial by this court.

Next, appellants assert the court erred in giving instruction No. 16, which relates that respondent would be entitled to damages for any aggravation of a pre-existing disability caused by the negligence of appellants, for the reason it fails to include the last part of their requested instruction No. 4 to the effect that respondent must prove by a preponderance of the evidence what portion of the disability now present was attributable to the injury and what portion is alone attributable to the pre-existing arthritic back condition. Neither in their brief, nor in their oral argument before this court, did appellants cite any authority for the proposition they espouse, i. e., that respondent was required to apportion the causes of his presently existing disability. After considering the complete instructions as given to the jury and considering the law applicable to this issue, we conclude the trial court made no error in respect of this instruction and that appellants were not prejudiced thereby.

The respondent, as previously mentioned, sustained a muscular strain of the shoulders, neck and lower back in the accident which was caused by a whiplash type injury. This caused a tearing of the muscles and ligaments in the affected area which heals by a regenerating process of collagen or scar tissue. Dr. Gardner concluded that when the respondent reinjured or restretched an already arthritic area in which there already existed a build-up of scar tissue caused by the disease, the stage thereby was set for the condition to progress faster than had such an injury not occurred. He compared the injury to a rapid wear and tear or an acceleration of the condition as distinct from the less acute wear and tear which progresses with the onset of an arthritic condition.

Dr. Springer was also of the opinion the arthritic condition was considerably aggravated as the result of the trauma sustained by respondent to a pre-existing arthritic area. He also concluded the arthritic process was accelerated, specifically pointing out that following the injury respondent was unable to perform all the duties of work which he had regularly performed prior to the accident. In the opinion of Dr. Springer the principal causative factor which resulted in the hitherto unsuspected arthritic condition becoming symptomatic was the neck and back sprain suffered by respondent.

The medical witness called by appellants, Dr. Keith Taylor, admitted that an injury such as respondent received could cause the arthritic condition of the respondent to become symptomatic with attendant disabling results. Neither Dr. Gardner, Dr. Springer nor Dr. Taylor could apportion, however, how much of respondent's present disability might be related to respondent's pre-existing arthritic condition as compared to the trauma and injury received by respondent in the accident.

There was medical testimony to the effect that the sprain sustained by respondent can itself be more or less a permanent condition. The constant dull pain in the back of the neck which respondent still suffers is consistent with this type of injury, although Dr. Taylor felt this most probably related to the arthritic condition and was not a residual strain of the initial injury received. Dr. Gardner, however, explained that since the healing process which follows a sprain involves the formation of scar tissue, the tissue loses its normal elasticity, and, consequently, mobile joints or bones do not have the freedom of movement present under normal circumstances. This

673

in itself creates a sort of mechanical instability with respect to the movement of joints and bones and results in additional stretching or, in effect, a minor re-strain of each affected area. Over a period of time, Dr. Gardner testified, there is a replacement of scar tissue by normal tissue; but it is not known whether this second process is ever complete, so a sprain may cause permanent disability.

The recurrent pain in respondent's right arm was described by Dr. Gardner as most likely a neuritis or nerve irritation emanating from the cervical spine in the area where arthritic changes were present. In his view, a very possible cause of the neuritis was the additional build-up of scar tissue, initiated by the injury to the neck and shoulders, in the area where the nerve root comes out, which resulted in impingement on sensory nerve fibers leading to the arm, thereby causing the pain of which respondent complained. Dr. Taylor disagreed with this theory principally because there was no objective evidence of major nerve root involvement or compression or atrophy of the muscles associated with motor nerve disturbance, which he believed essential to support the cause and effect relationship described by Dr. Gardner.

The respondent by competent, though conflicting, evidence proved that his pre-existing arthritic condition, asymptomatic to the point of the accident, was greatly aggravated and that such condition became symptomatic and disabling as a proximate result of the trauma received in the accident to an arthritic area. It is firmly established principle of the law that one injured by the tortious act of another may recover damages for the aggravation of a pre-existing disability. A defendant in a personal injury action takes the plaintiff as he finds him. Garrett v. Taylor, 69 Idaho 487, 210 P.2d 386; DiMare v. Cresci, 58 Cal.2d 292, 23 Cal.Rptr. 772, 373 P.2d 860 (1962); Knoblock v. Morris, 169 Kan. 540, 220 P.2d 171 (1950); Kalaf v. Assyd, 60 Ariz. 33, 130 P.2d 1036 (1942). See generally, 22 Am.Jur.2d, Damages, § 122, pp.

173–174; Restatement, Torts, § 461. Therefore we find nothing prejudicial in an instruction which in effect advised the jury that the appellants, if negligent, were legally responsible for all of the injuries to the plaintiff, whether the injuries were new ones or whether they were due to an aggravation of a pre-existing condition. Kawamoto v. Yasutake, 410 P.2d 976 (Hawaii 1966).

Appellants' requested instruction No. 4 concedes that they would be responsible for the "worsening effect" with respect to the pre-existing arthritic condition which proximately resulted from the trauma of the accident; however, their position is that they were entitled to have the jurors informed, as embodied in their instruction No. 4, that respondent must prove by a preponderance of the evidence "to what degree such worsening effect resulting from the injury actually presently exists in the respondent." The trial court's refusal of this instruction was not error.

The law in respect of this issue is correctly stated in the Colorado case of Newbury v. Vogel, 151 Colo. 520, 379 P.2d 811 (1963). That case, as the case at bar, involved a situation where the plaintiff suffered an acute sprain which had been superimposed on a pre-existing arthritic condition. The medical evidence was to the effect generally that it was impossible to state what part of the plaintiff's disability was attributable to the original arthritis, which was asymptomatic prior to the accident, and how much was due to the effect of the trauma incurred in the accident. Under those facts, the court held that the plaintiff was entitled to an instruction that if the jury could *not* make an apportionment, the defendant was liable for the entire disability. The court stated:

"We find the law to be that where a pre-existing diseased condition exists, and where after trauma aggravating the condition disability and pain result, and no apportionment of the disability between that caused by the pre-existing condition and that caused by the trauma can be made, in such case, even though a por-

tion of the present and future disability is directly attributable to the pre-existing condition, the defendant, whose act of negligence was the cause of the trauma is responsible for the entire damage. [cases cited]. Here the plaintiff was entitled to an instruction advising the jury that if they could not apportion the disability between the pre-existing arthritis and the trauma then the defendant was liable for the entire damage resulting from the disability. *Under the instruction given the jury was advised that the plaintiff could recover only that portion of his damage which was due to aggravation.* If the jury could not make such apportionment (and it might well be that they could not, since two of the medical experts could not) they were left without an instruction as to the law which would apply in such circumstances." (Emphasis supplied.) Newbury v. Vogel, supra, at p. 813.

Moyer v. Merrick, 155 Colo. 73, 392 P.2d 653 (1964); Intermill v. Heumesser, 154 Colo. 496, 391 P.2d 684 (1964); Kawamoto v. Yasutake, supra. Compare McDonald v. United Airlines, Inc., 365 F.2d 593 (10 Cir. 1966).

The trial court by its instruction No. 16 correctly advised the jury that respondent was entitled to recover damages for disability resulting from the aggravation of a pre-existing condition, but was not entitled to recover for any disability which respondent may now be suffering which was not caused or contributed to by reason of the accident. The jurors thereby were informed that respondent could recover only for that disability proximately caused by the accident; and this was the only instruction to which appellants were entitled. Since where, as in the *Newbury* case, if the jury could not apportion between the disability resulting from aggravation of the arthritic condition caused by the accident and the disability caused by the arthritic condition alone, the appellants were liable for the total disability, it would have been error to instruct that respondent had the burden of

proving by a preponderance of the evidence the apportionment of his presently existing disability.

Appellants also complain of the trial court's instruction No. 14, principally claiming that it is objectionable for failing to incorporate their requested instruction No. 5 that there was no loss of earnings or profit proved. However, there was no prejudice to appellants in the instruction as given. Respondent in his complaint did not seek damages for loss of earnings, nor was this issue tried before the jury. Even though no damage is claimed by reason of loss of earning capacity, testimony as to the physical ability of respondent to perform labor was competent as tending to show the extent of the injury received. Labonte v. Davidson, 31 Idaho 644, 175 P. 588; Graham v. Coeur D'Alene, etc., Co., Ltd., 27 Idaho 454, 149 P. 509.

Appellants additionally allege the court erred in giving instruction No. 15 for the reason it allows the jury to determine damages arising in the future as a result of the injury without defining what such damages are and fails to exclude any question of lost earnings or profit. Again, we find it difficult to see in what manner the jury was misled in light of instruction No. 14 which explicitly sets forth those elements of damages claimed by respondent, specifically omitting lost earnings or profit. The jury will be presumed to have considered the instructions as a whole; consequently, on appeal, jury instructions will not be considered piecemeal. Weaver v. Sibbett, 87 Idaho 387, 393 P.2d 601; Smith v. Sharp, 85 Idaho 17, 375 P.2d 184; Monske v. Klee, 38 Idaho 314, 221 P. 152; Kappes v. Jaap, 141 Mont. 471, 378 P.2d 665 (1963).

The contention is also made that instruction No. 15 is further objectionable in that it instructed the jury on the life expectancy of respondent when there was no issue tendered or proved as to any lost earning ability or lost income. However, the jury was properly instructed on the life expectancy of respondent where there was evi-

dence to the effect the injuries received were of a permanent nature and would cause future pain and suffering. Anno., 28 A.L.R. 1177, 1181; Anno., 50 A.L.R.2d 419, 439; 22 Am.Jur.2d, Damages, § 107, p. 157; Kawamoto v. Yasutake, supra.

■ Appellants further maintain that it was manifest error for the trial court to refuse their requested instruction No. 3 to the effect that respondent, as a qualified and duly licensed lawyer, could have mitigated the damages by returning to the full-time practice of his profession. The argument which is presented on this assignment is premised primarily upon the erroneous assumption that the question of loss of earning capacity had been placed in issue and therefore is without merit. For this same reason the giving of appellants' requested instruction No. 3 as submitted to the trial court would have been error.

■ Lastly, appellants claim that the court erred in failing to separate Boise National Leasing, Inc., from its co-defendants in the matter of liability limitation. They contend it is impossible to tell what the effect on the jury may have been if the limitation on the liability of one of the defendants had been related to the jury, and claim that a new trial should have been granted on this issue alone. This request, in the first instance, was never made of the trial court in the form of an instruction. But at any event, we fail to see just how the appellants were prejudiced. The court in instruction No. 19 informed the jurors that "if you find the plaintiff is entitled to recover against all defendants, you may not allocate the damages among them, but you must return a verdict in one single sum against all defendants." Additionally, appellants cite no authority to support this assignment of error. No error was committed by the trial court in this respect.

Judgment affirmed. Costs to respondent.

McQUADE and McFADDEN, JJ., and ANDERSON and PRATHER, District Judges, concur.