494 P.2d 567

**Ray MEISSNER and Elaine Meissner, husband and wife, Plaintiffs-Appellants and Cross-Respondents,**

**v.**

**Claude Edward SMITH and Bernard J. Wetzstein, Defendants-Respondents and Cross-Appellants.**

**No. 10838.**

Supreme Court of Idaho.

March 6, 1972.

Hepworth, Walker, Nungester & Felton, Buhl, for appellants and cross respondents.

Merrill & Merrill, Pocatello, and Benoit, Benoit & Alexander, Twin Falls, for respondents-cross appellants.

SHEPARD, Justice.

This appeal results from an action brought by the Meissners for the wrongful death of their minor son. Following trial, the jury returned a verdict in favor of the plaintiffs. The trial court thereafter ordered a new trial unless plaintiffs would agree to a reduction of the verdict by approximately 50%. Plaintiffs appeal from that order of the trial court and defendants cross-appeal from the denial of their motion for a new trial. We reverse the action of the trial court in reducing the verdict and affirm the action of the trial court in its denial of cross-appellants' motion for a new trial.

Gary Meissner, the 16 year, 11 month old son of the plaintiffs had been working for the defendant Smith baling and loading straw. The straw bales were stacked on a truck about six bales high on the truck bed

and to a height of two bales on a platform above the cab of the truck known as the over-shot. The bales, contrary to the usual custom of Smith, were not tied down. The truck was driven by Defendant Smith, and Meissner and a companion were sitting upon the bales on the over-shot platform. As Smith was driving on a county road at a speed of approximately 40 to 50 miles per hour, he observed the defendant Wetzstein pull onto that same road from a lane approximately 310 feet in advance of the Smith truck. Smith evidently jammed on his brakes, leaving skidmarks approximately 74 feet in length. Both Meissner and his companion fell off the truck and Meissner later died of his injuries.

At trial the parents of Meissner secured a jury verdict of $71,335.35. Upon defendants' motion for a new trial, the trial court held that the verdict was excessive and entered an order granting a new trial in the absence of plaintiffs filing a remittitur on all of the verdict in excess of $39,335.35.

That action of the trial court was oral in nature but is shown by an affidavit by counsel for plaintiffs. Defendants do not seriously dispute that the allegations of plaintiffs' counsel are in fact correct. It appears that the action of the trial court was based upon the decision of Checketts v. Bowman, 70 Idaho 463, 220 P.2d 682 (1950) with certain modifications thereto. The trial court herein evidently believed that the decision in *Checketts* set forth a maximum allowable verdict of $20,000 for the death of a minor child. The trial court herein raised that $20,000 figure to a 1970 value by application of an inflation rate. Plaintiffs-appellants herein have assigned the reduction of the jury verdict as error.

It is thus apparent that we must examine *Checketts* and determine if the reasoning and results thereof should be held valid and applicable to the case at bar. Defendants-respondents herein strongly urge that a limit on the amount which may be awarded for the death of a minor child in the State of Idaho has been set by *Checketts* and should be continued.

■ In *Checketts* the trial court had ruled that a $40,000 jury verdict for the death of plaintiffs' nine-year old son was "unreasonably excessive" and upon motion therefor had granted a new trial. On appeal the order of the trial court was affirmed in finding the verdict excessive but the case was remanded for the conditional granting of a new trial if plaintiffs refused a remittitur on all that portion of the verdict exceeding $20,000. Thus the trial court in the case at bar had ample basis for holding that in Idaho a verdict for the death of a minor child which exceeded $20,000 was excessive as a matter of law.

I.C. § 5-310 provides in pertinent part:

"The parents may maintain an action for the injury or death of a minor child, and a guardian for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another * * *. Such action may be maintained against the person causing the injury or death * * *."

I.C. § 5-311 provides in pertinent part:

"* * *. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."

The above statutes clearly enunciate a legislative policy that the only limitation to be assigned to the amount of recovery is that amount "under all the circumstances of the case [as] may be just."

It has been stated "[the] Amount of damages is a question of fact, which is for the jury in the first instance and secondly for the trial judge on a motion for a new trial." Blaine v. Byers, 91 Idaho 665, 670, 429 P.2d 397, 402 (1967).

It is also stated "On the other hand, however, the trial judge should not substitute his opinion on the amount of damages for that of the jury. [Citations omitted] Additionally, the general rule which prevails in this jurisdiction is that a motion for a new trial should not be granted unless it appears that a different result would follow a retrial." Blaine v. Byers, *supra*, at 671, 429 P.2d at 403.

In the case at bar it does not appear that the trial court held the verdict of the jury was excessive in that the evidence did not sustain the amount of the award. Rather, it is reasonably clear that the trial court held that the verdict was excessive in that the verdict exceeded the maximum previously set forth by this court in *Checketts*. It is also clear, as above stated, that the legislature intended that the verdict in each case for wrongful death should be weighed against the circumstances peculiar to that case and that the trial court should act to reduce a jury verdict only when it is not "just" considering all the circumstances. This court should not and will not abrogate the legislative policy by an arbitrary imposition of a limitation upon the amount which may be awarded by a jury when such amount is not excessive as a matter of fact considering all the circumstances attendant thereto.

Therefore, any language in *Checketts* which might tend to support a contrary conclusion to that expressed herein is overruled. While it is our belief that the trial court in the case at bar ruled that the application of *Checketts* controlled his actions and required him therefore to reduce the jury award, we cannot and do not say that the trial court based his actions solely on that interpretation of *Checketts*. We therefore reverse the action of the trial court in reducing the jury verdict and remand this aspect of the case for a finding and holding by the trial court determining whether under all the circumstances of the instant case alone, the verdict of the jury was excessive in that the evidence did not sustain the amount of the award. No new trial is necessary herein as there is at present ample testimony of the relative status of the deceased child and his parents, their earning capacities both at the time of death and estimated in the future, and the probability of contributions from the child to his parents during their respective lifetimes. Upon these factors, the trial court has ample evidence upon which to base his determination as to whether or not the jury verdict was excessive.

Plaintiffs-appellants have cited a large number of cases from foreign jurisdictions in which large verdicts were awarded for the death of a minor as tending to support their contention that the jury verdict was not excessive as a matter of fact. However, examination of those cases to determine if the jury verdict in the instant case was excessive would not be appropriate. Many of those awards from foreign jurisdictions are based on differing standards of compensations and the factual situations, while analogous, are not identical. Such cases, while they may be valuable in identifying the trend of jury verdicts in cases involved in the death of minors, should not be held as determinative as amounts to be allowed in this jurisdiction. Hubble v. Record, 80 Idaho 403, 331 P.2d 270 (1958); Garrett v. Taylor, 69 Idaho 487, 210 P.2d 386 (1949). As was stated in *Garrett*:

"A comparison of the facts of this case with the numerous other cases involving a challenge to the amount of the verdict would be of little assistance. Each case must rest upon its own particular facts and the sound and impartial discretion of the jury and the trial judge." 69 Idaho 487, 490, 210 P.2d 386, 388.

We turn now to the cross-appeal of defendants and cross-appellants. Both defendants assign error to the trial court's denial of their motion for a new trial. Their grounds therefor are allegations that the jury verdict was excessive and that the evidence was insufficient to justify such a verdict.

This court has many times said, and most recently in Rosenberg v. Toetly, 93 Idaho 135, 138, 456 P.2d 779, 782 (1969); and Blaine v. Byers, 91 Idaho 665, 671, 429 P.2d 397, 403 (1967):

"* * * this court is firmly committed to the rule that a trial court possesses a discretion to be wisely exercised in *granting or refusing to grant* a new trial and that such discretion will not be disturbed on appeal unless it clearly appears to have been exercised unwisely and to

have been manifestly abused." (Emphasis in original)

Defendants and cross-appellants nowhere point out specifically where the evidence is insufficient to justify the verdict rendered herein. The evidence, although controverted at times, is adequate to support a verdict for plaintiffs. As aforesaid the determination of the amount of the award is reserved for the trial court upon remand.

Defendant and cross-appellant Smith further asserts that the trial court erred in refusing to grant his motion to amend his answer to add the affirmative defense of assumption of risk and further erred in refusing to give defendant Smith's instruction upon assumption of the risk. Defendant and cross-appellant Smith cites Domingo v. Phillips, 87 Idaho 55, 390 P.2d 297 (1964); Hodge v. Borden, 91 Idaho 125, 417 P.2d 75 (1966); and Fawcett v. Irby, 92 Idaho 48, 436 P.2d 714 (1968) as authority for his assertion that an instruction upon assumption of the risk should have been given.

We note that all of the cases cited by the cross-appellants herein involved tort actions wherein no master-servant relationship existed. We doubt the continued validity of Domingo v. Phillips, *supra*, in view of the court's holding in Fawcett v. Irby, *supra*. In *Fawcett* the court discussed an instruction given the jury on the defense of assumption of the risk and held the instruction erroneous in that it "did not require any showing that the assumption of the risk was the proximate cause of the injury * * *." The court said:

"Thus the jury could have been influenced to find against plaintiffs because of acts or conduct on their part which did not proximately cause or contribute to the accident." 92 Idaho 48, 53, 436 P.2d 714, 719.

We note that the instruction submitted herein by defendant Smith and denied by the trial court likewise failed to indicate to the jury that the assumption of the risk asserted by defendants must be, or contribute to, the proximate cause of the injury to the decedent.

However, as stated, all those cases, including *Fawcett*, lack the element of employee-employer relationship. We point out that the later case of Otto v. Mell, 94 Idaho 109, 482 P.2d 84 (1971), was a master-servant injury case wherein this court discussed instructions on the doctrine of assumed risk by an employee. The court stated:

"Therein this court held the giving of an instruction on this doctrine [assumption of the risk] to be prejudicial error when the record failed to disclose some actual knowledge of the danger on the part of the plaintiffs, that they understood and appreciated the risk therefrom, or that plaintiffs voluntarily exposed themselves to such danger. Under this situation the giving of the instruction embodying the doctrine of assumption of risk, when there was no evidence to justify it, was prejudicial error." 482 P.2d 84, 85.

The court further stated:

"In summary, these cases state that the defense of assumption of the risk in an employer-employee relationship requires that the employer establish that his employee knew the danger involved, and that the employee understood and appreciated the risk therefrom and voluntarily exposed himself thereto." *Id.*

In the case at bar there was no showing that the employee, Meissner, knew of the danger that the defendant Smith was going to operate his truck in a negligent fashion and that Meissner voluntarily exposed himself to that risk. Therefore, the action of the trial court in denying the instruction on the doctrine of assumption of the risk and the trial court's refusal to permit the amendment of defendant Smith's complaint to reflect the defense of assumption of the risk were correct.

Both of the defendants and cross-appellants assign as error an instruction which advised the jury that the mere assumption of an unconventional position in or upon the truck by the deceased is not of

itself sufficient basis upon which to predicate the finding of contributory negligence. The cross-appellants assert that the giving of that instruction informed the jury that the decedent could not as a matter of law be guilty of contributory negligence. Such assertion ignores the instruction upon contributory negligence which was also given by the trial court and which is discussed *infra*. The instruction was not per se error when coupled with the further instruction on contributory negligence. Cross-appellants' assertions ignore the necessity of a nexus or causal relationship between the "unconventional position" and the accident and resulting injuries. *See:* Bordelon v. Great American Indemnity Company, 124 So.2d 634 (La.App.1960); Roberts v. Davis, 422 S.W.2d 890 (Ky.App.1968).

Defendants cross-appellants next assert that the trial court erred in its instruction regarding contributory negligence.[1]

■ Defendants cross-appellants suggest first that the instruction was erroneous in that it did not state as a standard that Meissner must have "known" or "in the exercise of reasonable care should have known." The instruction, while not exemplary for clarity, in effect sets up the standard contended by defendants cross-appellants, since it instructed the jury that they were to consider what a reasonably prudent child of the same age, experience, knowledge and discretion would or would not have done, and would or would not have anticipated. Therefore said instruction was not erroneous. If the instruction had stated that the jury had to find that the particular decedent herein knew of the danger, then under standards previously announced the instruction would have been erroneous. However, posed in the language used herein by the trial court, no error resulted.

■ Defendants and cross-appellants further assert that the court's instruction on contributory negligence was erroneous in that it required the jury to find that the decedent should have anticipated the exact acts of the defendants prior to being able to find decedent contributorially negligent. Defendants and cross-appellants cite Burkland v. Oregon Short Line Railroad Company, 56 Idaho 703, 58 P.2d 773 (1936), as

---

1. "INSTRUCTION No. 12
   "Contributory negligence is normally defined as negligence on the part of an injured or deceased person which contributes as a proximate cause to the happening of the accident.
   "In this case both defendants have affirmatively assigned contributory negligence on the part of the deceased as a proximate cause of the accident.
   "In order for the actions of the deceased boy to constitute contributory negligence you must find not only that Gary Lynn Meissner, in assuming the position on top of the load of straw, did an act that a reasonably prudent child of the same age, experience, knowledge and discretion would not have done, but you must also find that in assuming such a position, a reasonably prudent child of the same age, experience, knowledge and discretion in the same position would have anticipated some negligent acts of the defendants or either of them from which injury could result.
   "If you find that such a child under the same circumstances would not have anticipated the acts of the defendants and a consequent injury, then the deceased Gary Lynn Meissner cannot be charged with contributory negligence.
   "If you find that such a child should have anticipated the danger from which Gary Lynn Meissner was killed but you also find that the negligence of Gary Lynn Meissner in placing himself in that position was not a proximate cause of the accident and resultant death, then Gary Lynn Meissner cannot be charged with contributory negligence. For even though the negligence was present, it must be a proximate cause of the injury before it can be grounds for a defense of contributory negligence.
   "However, if you find that a reasonably prudent child of the same age, experience, knowledge and discretion as the deceased would have recognized the danger and would have anticipated the acts of the defendants, and if you then find that the acts of the deceased in nevertheless assuming the position he did was a contributing proximate cause of the injuries to him, then his parents cannot recover for his death regardless of what negligent acts the defendants or either of them may have done."

authority for their contention. *Burkland* involved an action by a railroad employee against his employer for an accident which took place in the State of Utah. The question there posed was not one of contributory negligence of the plaintiff, but rather the primary negligence of the defendant in the operation of a train. The facts of that case, taken together with the question posed therein of the interpretation of the Federal Employers' Liability Act, render that case non-persuasive herein.

We further note that the instruction of the district court assigned as error herein was but one of six instructions dealing with negligence, contributory negligence, and proximate cause. The instructions as a whole placed before the jury the defendants' and cross-appellants' theory of the case, together with correct statements of the law thereon. We find no error therein. Davis v. Bushnell, 93 Idaho 528, 465 P.2d 652 (1970); Hayslip v. George, 92 Idaho 349, 442 P.2d 759 (1968).

█ Defendants cross-appellants next assert error in the trial court's refusal to give their requested instruction which advised the jury that the allegations in plaintiffs' complaint and the prayer therein were to be disregarded by the jury in arriving at its verdict except that the amount of damage alleged in plaintiffs' complaint fixed a maximum limit. We note, however, that while the trial court did refuse defendants' requested instruction, it gave an instruction which adequately covered the same points.[2]

█ Cross-appellants further assert that error was committed when, over their objection, plaintiffs' counsel was permitted to utilize the amount of damages prayed for in plaintiffs' complaint during final argument. They further assert error in the utilization of charts containing such amounts by plaintiffs' counsel in his final argument to the jury. Defendants and cross-appellants suggest that such tactics denied defendants a fair consideration of the question of damages. Defendants cross-appellants argue that Botta v. Brunner (1958), 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331, promulgates the rule prohibiting such argument by counsel which rule should be adopted in Idaho.

Plaintiffs on the other hand contend that the rule announced in *Botta* is definitely a minority rule, not subscribed to by any of our neighboring sister states, and that it should not be adopted in Idaho. We are constrained to agree and find the following cases more persuasive than *Botta*: Bayers v. W.O.W., Inc., 151 Colo. 554, 379 P.2d 815 (1963); Beagle v. Vasold, 65 Cal.2d 166, 53 Cal.Rptr. 129, 417 P.2d 673 (1966); Olsen v. Preferred Risk Mutual Ins. Co., 11 Utah 2d 23, 354 P.2d 575 (1960); Kometani v. Heath, 50 Haw. 89, 431 P.2d 931 (1967); Johnson v. Brown, 75 Nev. 437, 345 P.2d 754 (1959); Jones v. Hogan, 56 Wash.2d 23, 351 P.2d 153 (1960). No error resulted from permitting counsel for plaintiffs to refer to the amount of plaintiffs' prayer in his argument to the jury, both orally and by the use of charts. The record does not reflect any unfair, misleading or inflammatory tactics by counsel in his use of such figures.

Defendant cross-appellant Wetzstein asserts the trial court erred in refusing to give a requested instruction on the issue of speculative damages. We have reviewed the instructions actually given by the court, and when read as a whole, the issue of speculative damages is sufficiently covered therein. Davis v. Bushnell, *supra*; Hayslip v. George, *supra*.

█ defendants and cross-appellants allege that the trial court erred in admitting testimony by an economist. Essentially that testimony indicated the prob-

---

2. "INSTRUCTION NO. 2
"The claims of the parties as set forth for you in Instruction Number 1 do not in any way constitute facts or evidence. They merely show what the parties expected to prove at the times the plead-ings were filed. Whether or not such claims have been proved is entirely dependent upon the evidence, and in determining this you must rely solely upon the evidence presented in court."

able future income of the deceased child based on certain assumptions regarding high school and college education, or some portion thereof, and finding a probable or average disposable income. That disposable income was indicated as that sum which the deceased would probably have possessed after paying for necessaries. The import of the testimony appears to be that the witness determined a maximum which the deceased would have had available to contribute to the support of his parents. We note first that there was adequate testimony upon which to find that the deceased probably would have completed high school and college, in that he was a diligent hardworking child, intended to go to college and was accumulating savings therefor. There was voluminous testimony of the extremely close relationship of the deceased to his family.

Defendants cross-appellants assert that only income prior to the age of majority is relevant and that the inclusion of post-21 income figures was prejudicial and inflammatory. We assume, as did the court in Checketts v. Bowman, *supra*, that the more liberal rule as to recoverable elements of damage is applicable in Idaho and that the base of allowable recovery to parents for the loss of a child includes the loss of prospective comfort, care, protection and assistance during the common life expectancy of the parents and child. As the trial court instructed the jury, the weight of such evidence was for the jury. Where, as here, a very strong family relationship was shown, and where the parents possessed a limited income potential and that income was directly tied to the physical labor of the parents, we cannot as a matter of law state it was improbable that deceased would have in the future given financial support to his parents. The testimony of the witness, while in some respects speculative, nonetheless touched an area of possible damages and was not couched in such inflammatory terms as to outweigh its possible evidentiary value. Under such circumstances we cannot state as a matter of law that it was an abuse of discretion for the trial court to admit the testimony. Where the question of admittance is "on the borderline between that which is admissible and that which is not * * * the ruling of the trial court will not be disturbed." Howard v. Missman, 81 Idaho 82, 88, 337 P.2d 592, 596 (1959).

The judgment of the trial court in granting a new trial conditioned upon plaintiffs accepting a remittitur is reversed and remanded. The trial court is instructed to make its determination as to the excessiveness of the verdict in accordance with the standards set forth herein. It is instructed to thereafter either enter judgment for the full amount of the jury verdict, or issue its order granting a new trial conditioned on a reduction in the amount of the verdict to a sum which it finds "just" in consideration of all the circumstances of this particular case.

The judgment of the trial court is *affirmed* in all other particulars. Costs to appellants.

McQUADE, C. J., McFADDEN and DONALDSON, JJ., and MAYNARD, District Judge, concur.