412 P.2d 418

J. Robert JACKSON and Anthony Messuri, dba Jackson, Messuri & Co., Plaintiffs-Appellants,

v.

BLUE FLAME GAS COMPANY, an Idaho corporation, Defendant-Respondent.

No. 9478.

Supreme Court of Idaho.

March 25, 1966.

Smith & Miller, Caldwell, for appellants.

Gigray, Boyd & Downen, Caldwell, for respondent.

SPEAR, Justice.

The appellants, a firm of accountants, brought suit in the lower court on an oral contract for services performed for the respondent corporation, Blue Flame Gas Company. After a trial before the court sitting without a jury, the appellants were awarded a judgment for a sum less than they sought in their complaint; and they appealed.

Appellants are a two-man certified public accounting partnership. One of the partners, J. Robert Jackson, had done some accounting work for respondent for several

years prior to 1961. These services were terminated by respondent because Jackson's charges were purportedly too expensive. From June 1, 1961, the accounting work for respondent had been handled by another accountant who was a bit tardy in supplying respondent with the accounting information desired at times; so on or about February 8, 1962, Chester Kaufman, an officer of respondent, accompanied by Dean Rundell, plant manager of the respondent's gas plant at Kamiah, Idaho, called at Jackson's office in Caldwell, Idaho, and advised him respondent was considering changing accountants for two of its plants—one at McCall and the other at Kamiah, Idaho. Kaufman informed Jackson he wanted to know just how much it was going to cost the company per month per plant for all the accounting work done on a quarterly basis and told Jackson the sum of $100 per month was excessive. The respondent was interested in determining on a budget basis just how much would be necessary for the accounting work in each of its two plants. Jackson could not give them an answer at that time but indicated he could do so at a meeting to be held the following day.

The same three men, i. e., Jackson, Kaufman and Rundell, met again the next day, and from a computation Jackson had reduced to writing he estimated the cost of such accounting on a quarterly basis at about $38 per month per plant. Thus far there is no conflict in the facts.

Appellants contend that the $38 estimate was only for the quarterly accounting work; that it was also understood (1) that there would be an additional charge for the transferring of the books from the hand method used by the former accountant to the machine type method used by the appellants; (2) that the year-end audit and tax work would entail an additional charge of $200 to $300 per plant; and (3) that the traveling expenses in connection with the accounting work would also be charged separately, including meals and lodging, and one-half the normal hourly work rate for travel time during working hours. Jackson admits no agreement was reached between the parties on these items. Kaufman and Rundell admit having some discussion concerning year-end auditing and tax work and other items. They testified that Jackson agreed to do all accounting work on a quarterly basis for between $35 and $40 per month per plant; and that at the very end of this second meeting Kaufman offered to pay as much as $40 but nothing more, per month per plant for all accounting work.

Between February 1962 and October 1962 appellants did perform several accounting services for the respondent and then were discharged because of alleged over-billing for such services. The work performed included: (1) quarterly accounting for the January, February and March 1962 quarter for both plants; (2) transfer or "cleanup"

work from the previous bookkeeping method to the machine method used by the appellants; (3) accounting work for the "short" quarter of April and May 1962 (this being necessitated because respondent operates on a fiscal year ending May 31st); (4) year-end audit and tax work including travel expenses for the fiscal year ending May 31, 1962; (5) quarterly accounting for the long quarter of June, July, August and September 1962; and (6) some preliminary work for the quarter following September 1962.

By testimony of their only witness, Jackson, who refreshed his memory by use of plaintiff's exhibits 4 and 5, appellants established the following billings to and payments by the respondent:

*Plant at McCall:*

(1) About March 31, 1962, billed for analyzing and reviewing postings for the period 6–1–61 through 12–31–61 and system work in connection with the new IBM system and in connection with taking over the records from the previous bookkeeper, a charge of $137.50.

(2) April 12, 1962, billed for accounting services for the three months ending March 31, 1962, a charge of $112, making a total balance at that time of $249.50.

(3) Payment on April 26, 1962, of $100.

(4) Payment on May 2, 1962, of $149.-50, paying the entire remaining balance in full.

(5) July 1, 1962, billed for accounting services for two months ending May 31, 1962, in the amount of $85.

(6) August 3, 1962, payment of $85, leaving a zero balance as of that date.

(7) August 20, 1962, billed for auditing and income tax services for the year ending May 31, 1962 in the amount of $548, and for expenses and meals and lodging, $70, totalling $618.

(8) November 6, 1962, billed for accounting services for four months ending September 30, 1962, $152.

(9) December 4, 1962, billed for services performed in preparing journal entries for the next accounting period, before notification of discontinuation of services, in the amount charged of $15.

These billings are not disputed by the respondent, and the payments are corroborated by three of the checks contained in respondent's exhibit C.

Appellants contend that they also received a check from respondent on the McCall plant on December 4, 1962, in the amount of $335. This is disputed by the respondent, and in answer to inquiries made by the court, Kaufman testified this payment was in fact made for other services performed by the appellants in the year 1961, prior to any meetings and discussions of the parties in February, 1962.

**398**

*Plant at Kamiah:*

(1) March 31, 1962, a billing for analysis and review of postings for the period 6–1–61 through 12–31–61 for the system work on the new IBM accounting system and certain analysis work in connection with taking over the records of the previous bookkeeper, the charge being $146.50.

(2) April 16, 1962, billed for accounting services for three months ending March 31, 1962, charge $114.

(3) April 26, 1962, payment by check for $146.50, leaving an unpaid balance of $114.

(4) June 16, 1962, payment of $114, which paid the remaining balance due.

(5) On or about July 1, 1962, billed for accounting services for two months ending May 31, 1962, in a charge of $80.

(6) August 20, 1962, billed for year ended May 31, 1962, for professional services $386, and for out of town meals and lodging $50, totalling $436, making a new balance owing of $516.

(7) December 4, 1962, billed for a special trip through Kamiah for financial statement review with management and consultation regarding inventory control problems, charge $32.

(8) In the same billing, accounting services for four months ending September 30, 1962, charge $165, the December 4th billing totalling $197.

That these billings were received is not disputed by the respondent and the payments indicated are corroborated by two of the checks contained in respondent's exhibit C.

Thus, according to the testimony on behalf of appellants, there was a balance on the McCall account of $450 and on the Kamiah account of $713, for a total balance of $1,163, the amount for which appellants sued the respondent.

This case was tried on September 11, 1963, and on October 8, 1963, the trial judge filed his memorandum decision (later adopted as findings of fact and conclusions of law) IRCP 52(a), in which he found that the respondent had impliedly in fact offered to pay appellants a reasonable sum but not to exceed $80 per calendar month for certain professional services and that respondent thereby impliedly in fact offered to reimburse appellants for reasonable costs of travel, meals and lodging reasonably incurred by the appellants in the performance of such services; and that, by finding No. 4, the professional services contemplated by such offer which appellants impliedly in fact knew included (a) the ordinary giving of advice to respondent as to the keeping by respondent of business books and records of respondent, (b) the performance of certain accounting work for respondent, including certain accounting work with respect to certain business of respondent con-

ducted in January and February of 1962, (c) the performance of certain and periodic auditing work for respondent, including the tracking down and rectification of ordinary errors in certain business books and records of respondent, (d) the making and delivery to respondent of certain and periodic reports with respect to said audits, (e) the making and delivery to respondent of certain tax returns, and (f) the giving of ordinary and clarifying explanations of such reports and tax returns to respondent.

The court further found that appellants accepted such offer by performing the professional services involved through the month of September 1962; that, by finding No. 6, the reasonable value of such services was in the sum of $720, and that in the performance thereof appellants had incurred certain costs for travel, lodging and meals in the reasonable sum of $120. The court also found that respondent had made payment of $595, and concluded that respondent owed appellants the sum of $245. Counsel for appellants was requested to prepare and submit to the court appropriate and complete findings of fact and conclusions of law, but in the judgment dated the 21st day of January, 1964, some three and a half months after the memorandum decision was filed, that memorandum decision was adopted as the findings of fact and conclusions of law, and judgment in appellants' favor was entered for the principal

sum of $245 together with interest and costs.

Appellants assigned five specifications of error. By the first two appellants contend that findings of fact No. 4a, b, c, d, e and f as set forth herein, and No. 6, are not supported by and are contrary to the evidence. The third specification is the general one that the court erred in making and entering the judgment because the same is contrary to the evidence. By the fourth and fifth specifications appellants contend the court erred in sustaining objection to plaintiffs' exhibits 1, 4 and 5.

■■ Plaintiffs' exhibit No. 1 is nothing more than the computation prepared by Jackson prior to the second meeting with Kaufman and Rundell in which he arrives at the conclusion that appellants could perform the accounting for respondent on a quarterly basis for $38 per month per plant. It also contained some notations of $200 to $300 which appellants claim refer to the estimated year-end and tax work charges. The trial court was correct in denying admission of exhibit No. 1 because it is a self-serving instrument. Furthermore the witness was permitted to use the document to refresh his memory and all the pertinent information contained thereon was introduced in evidence by his testimony. 5A C.J.S. Appeal and Error §§ 1748 and 1753. Additionally, this assignment of error is en-

titled to no consideration here, because it is not supported by brief or argument.

■ Plaintiffs' exhibits 4 and 5 are merely summaries of information already before the court in plaintiffs' exhibit 3 which was admitted. There are authorities holding that the admission of such summaries would not have been error. I.C. § 9–411; 20 Am.Jur., Evidence, § 449; Federal Reserve Bank v. Idaho Grimm Alfalfa Seed G. Ass'n, 9 Cir., 8 F.2d 922 (Idaho, 1925), cert. denied 1926, 270 U.S. 646, 46 S.Ct. 347, 70 L.Ed. 778. However, the trial court committed no reversible error in ruling these exhibits inadmissible because all of the pertinent information on both exhibits was placed in evidence by testimony of Jackson using these very exhibits to refresh his memory. Thus all of the evidence contained on these exhibits was fully presented to the trial court. 5A C.J.S. Appeal and Error §§ 1748 and 1753.

■ The crux of this appeal is found in the first three specifications of error, (I) that the trial court's finding of fact No. 4a, b, c, d, e, and f (an enumeration of the accounting duties to be performed by the appellants under their contract) were not supported by the evidence; (II) that finding of fact No. 6 (the reasonable value of the services set at $720) is not supported by and is contrary to the evidence; and (III) that the judgment entered was contrary to the evidence. The authorities cited by the appellants and the arguments contained in their brief disclose they deem this a case of quantum meruit—one for the recovery of the reasonable value of services rendered. This is not true. Appellants did not plead quantum meruit, nor did they offer proof sufficient to sustain an award by the trial court on the basis of quantum meruit. On the contrary, appellants relied entirely upon an express contract and they failed in their burden of proof, for the evidence is insufficient to show an express agreement or contract between the parties on the terms and conditions contended by appellants. Instead the trial court found a contract by an offer from respondent accepted by performance by appellants.

While finding of fact No. 6 of the memorandum decision of the trial court ("that the reasonable value of such services so performed by plaintiffs, all of which was charged by plaintiffs, prior to October 15, 1962, was the sum of $720") would seem to indicate that disposition of this matter was being made on the basis of quantum meruit, the true basis of the trial court's decision is discernible from the final paragraph of the memorandum decision:

"A final remark of the Court is this: that regardless of what each of the parties may have separately thought concerning the formation of a contract and the terms thereof, this Court is firmly

convinced that, in the eyes of the law, the minds did not meet, by virtue of what the parties said to each other and by virtue of how the parties otherwise acted, until Plaintiffs performed services under the offer made by Defendant, which offer was expressly, and impliedly, conditioned as set forth in this MEMORANDUM DECISION."

Thus the trial court held that no express oral contract had been agreed upon by the parties because there never was a meeting of the minds. The appellants understood the agreement to be that they would perform the quarterly accounting services at the rate of about $38 per month per plant. On the other hand, respondent was convinced that appellants were to perform all accounting services, including year-end and tax work, for $35 to $40 per month with the ceiling being placed at $40. Thus, the trial court was correct in determining that no express oral contract had in fact been reached.

However, the trial court did conclude that respondent had made a bona fide offer to the appellants to turn its books over for all accounting purposes for a sum not to exceed $40 per month per plant, and that thereafter appellants impliedly accepted that offer by picking up the books and performing the services. There was in fact an implied contract for appellants to perform all accounting services for the two plants of the respondent for not more than $40 per month per plant, and a previous finding in paragraph (6) as to the reasonable value of such services is construed merely as a finding that such contract was not unreasonable or unconscionable. The trial court's finding in this regard is bolstered by the uncontradicted testimony that respondent is now having this same accounting service for the McCall and Kamiah plants performed by a firm of certified public accountants for the sum of $25 per month per plant, including year-end and tax work.

The trial court's findings are somewhat ambiguous but appellants are in no position to complain. It will be noted the memorandum decision was filed October 8, 1963 and appellants' counsel was requested to prepare and submit appropriate and complete findings of fact and conclusions of law, together with appropriate judgment, consistent with that decision. This the appellants neglected to do, for the record discloses that when the judgment was rendered January 21, 1964, some three and one-half months later, the memorandum decision itself was adopted as the findings of fact and conclusions of law in this action.

Moreover where final judgment or order of the lower tribunal is correct, but entered upon an erroneous theory, the judgment or order will be affirmed by the appellate court upon the correct theory. Gagnon v. St. Maries Light etc. Co., Ltd., 26

Idaho 87, 141 P. 88; Evans v. Continental Life and Accident Company, 88 Idaho 254, 398 P.2d 646.

Appellants contend respondent paid, without protest, billings some of which were labeled for services other than quarterly accountings on the McCall plant totalling $249.50 by May 2, 1962 and on the Kamiah plant totalling $260.50 by June 16, 1962, as shown by the billings and payments set out in full in the facts stated previously in this opinion, and therefore it is obvious respondent knew it was paying more than the $40 per month per plant and thereby assented to a different contract. This is explained by Kaufman's testimony that he paid no particular attention to the items on the billings for he felt appellants were to perform all necessary accounting services for the $40 per plant per month agreement; and while he realized the payments made were in excess of $40 per month for the period prior to such payments, appellants had indicated they needed the money to meet a heavy mortgage payment and he expected this to be adjusted later so the payments would not exceed the offered limit. Respondent did object immediately upon receiving the August 20th billings of $618 and $516 for the respective plants, for this was exactly the type of billing Kaufman had advised Jackson he wanted to avoid when they had the February 1962 meetings and discussions in Caldwell.

Appellants also contend the December 4, 1962 payment of $335 on the McCall account is indicative of a different agreement than the $40 per month per plant found by the trial court; but this is disputed by Kaufman in response to inquiry by the trial judge, his testimony being that this payment was for services rendered by Jackson in the year 1961 prior to the February 1962 meetings and discussions.

■ Where the findings of the trial court are supported by substantial and competent, though conflicting, evidence, such findings will not be disturbed on appeal. Edgeller v. Johnston, 74 Idaho 359, 262 P. 2d 1006; Freedman v. Hendershott, 77 Idaho 213, 290 P.2d 738; Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630.

■ Under the rule that findings should be construed in support of the judgment, we find they are sufficient in this case. Fouch v. Bates, 18 Idaho 374, 110 P. 265; McCarty v. Sauer, 64 Idaho 748, 136 P.2d 742; Cazier v. Economy Cash Stores, 71 Idaho 178, 228 P.2d 436. Additionally the trial judge is the arbiter of conflicting evidence. His determination of the weight, credibility, inferences and implications thereof is not to be supplanted by this court's impressions or conclusions from the written record. Sellars v. Sellars, 73 Idaho 163, 248 P.2d 1063; Fish v. Fleishman, 87 Idaho 126, 391 P.2d 344.

These same principles equally apply to findings No. 4a, b, c, d, e, and f of the trial court. Evidence was adduced showing Jackson was thoroughly familiar with the accounting procedures required for the two plants involved by reason of over six years previous experience; he knew they had been kept for about six months by another accountant, and he knew, or should have known, what duties were necessary to provide adequate accounting for the two plants. The services actually performed by appellants were strikingly similar to those enumerated in finding No. 4. Therefore, we are constrained to hold there was no reversible error committed in making such finding—it is supported by substantial competent evidence.

The trial court was correct in determining that respondent owed appellants the sum of $40 per month for each of the two plants for a period of nine months, i. e., from January through September, 1962, totalling $720, on which respondent had paid $595, leaving a balance of $125. Whether or not the allowance to appellants of $120 for travel expenses, meals and lodging is sustainable is not before this court, no appeal having been taken therefrom.

The judgment of the trial court is affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.