462 P.2d 742

Douglas P. HOBBS, Plaintiff-Appellant,

v.

ADA COUNTY, State of Idaho, Defendant-Respondent.

No. 10300.

Supreme Court of Idaho.

Dec. 22, 1969.

**444**

Rayborn, Rayborn, Webb & Pike, Twin Falls, for appellant.

Moffatt, Thomas, Barrett & Blanton, Boise, for appellee.

McQUADE, Justice.

This appeal is from a jury verdict and judgment against the plaintiff-appellant, Douglas P. Hobbs, in a battery action. Appellant alleged in his complaint that, in January, 1964, while detained by the Ada County sheriff's department, he was bludgeoned twice with a blackjack wielded by a deputy sheriff. Appellant makes twenty-eight assignments of error which he and the respondent, Ada County, divide into two general categories. Assignments 1 through 15 concern the admissibility of evidence on cross examination of the plaintiff or evidence of defendant's witnesses. The remaining 13 assignments deal with instructions which were or were not given.

The trial of this case was before a jury on April 8, 1968, in Boise, Idaho. The complaint alleged that appellant had suffered a battery at the hands of respondent's servants while in custody at the Ada County jail. The answer denied that allegation, and in the alternative, alleged that any striking which injured the appellant was privileged.

There was substantial conflict in the evidence. Hobbs testified at great length concerning his health prior to his jail experience and the misery he had suffered since. He told of an automobile accident in 1962 from which he had suffered "whiplashes" involving a bad neck, headaches and nine days in the hospital. But he explained that these were but transient symptoms, and that he had fully recovered and returned to work in July, 1963.

Appellant gave a lengthy relation of the events of January 27 and 28, 1964. According to his account, on the night of the 27th, he had become a trifle inebriated and had gone to his ex-wife's home for a talk; he claimed that they were attempting a reconciliation at that time. When he got there, he explained, he laid down on the ex-Mrs. Hobbs' bed to talk with her, and his twenty year old daughter, for no reason, became concerned and called the sheriff's department. A few minutes later a number of deputies arrived, and Hobbs then left.

After leaving Mrs. Hobbs' house he went into town, imbibed some more, and returned to his ex-wife's home where, according to his own account, in a mild fit of pique, he kicked in the rear screen door, breaking the door frame, and ripped the phone from the wall. Having grown weary from these endeavors, the appellant went to his home and fell asleep to be awakened and arrested at about 2:00 a. m. on the 28th. He was taken to jail and put in a cell until bailed out at about 11:00 o'clock that same morning. Hobbs further testified that he spent the remainder of the day in shamefaced repentance until he was, out of the blue, re-arrested late that afternoon.

According to Hobbs' testimony, after he was returned to jail and booked, he was unexpectedly black-jacked twice while bent over putting on his jail coveralls. The remainder of appellant's testimony concerned his physical condition, which included chronic headaches, and the medical treatment he had received since the alleged attack.

On cross examination appellant was asked about an action he had filed for damages alleged to have arisen out of the 1962 automobile accident. This cross examination included the reading of a deposition taken of Hobbs in August, 1963, in which he had complained in some detail of headaches and of his inability to do much work. Appellant was also examined about his relationship with his ex-wife at the time of his multiple arrest, and the circumstances surrounding the arrival of the police at his ex-wife's home on the night of January 27–28.

Appellant made no objection to the cross examination, even though the questions propounded suggested that Hobbs had attempted to rape the ex-Mrs. Hobbs. Nor was there objection made when appellant was asked about a solicitation to have intimate relations with a girl friend while in town at a time subsequent to the alleged rape attempt.

There was testimony to the effect that Hobbs was not bludgeoned, but was found bleeding, alone, in his cell, and that his condition was originally diagnosed as a stroke.

On respondent's side, there was more testimony about Hobbs' adventures on the 27th and 28th of January, and about the charges filed by the ex-Mrs. Hobbs. And there was testimony to the effect that the officer alleged to have beaten Hobbs was not on duty at the time of the alleged battery. The thrust of defendant's witnesses was that Hobbs' story was factually untrue and was improbable because it did not comport with the ordinary procedure of the sheriff's department. Appellant's counsel's cross examination of these witnesses covered many of the same circumstances elicited on direct examination. Hobbs' counsel made only three objections during the introduction of defendant's evidence, and these were made late in the trial.

Appellant argues that the extensive accounts of Hobbs' activities on the night of the 27th and 28th introduced by the County were irrelevant and immaterial. This issue, he says, is simply whether or not the battery occurred, and that all of the evidence about the alleged rape attempt was probative of no factual question being litigated and highly prejudicial. This is generally the subject of appellant's assignments of error 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, and 15. The County appears to concede the irrelevance of this evidence; but it argues that, because appellant interposed no objection to most of the evidence at trial he cannot now complain for the first time on appeal.

The appellant argues that too strict enforcement of the rule requiring objections to be made for every error would not serve the interest of justice and that a trial judge has an affirmative duty to restrict the scope of all examination. While appellant's position may appeal in the abstract and in clear cases it is most unconvincing in the context of this action.

The appellant opened up most of the areas of evidence which he now claims are irrelevant. Appellant testified at great length about the entire episode, and gave an impression of ruthless police mistreatment.

The general rule to govern the situation where a party has opened the door for admission of irrelevant evidence at trial only to complain when his adversary takes advantage thereof was succinctly stated over sixty years ago in the federal case of Warren Livestock Co. v. Farr, "one who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening."[1] Professor McCormick has adopted a less general, more functional approach to the problem.

1. 142 F. 116, 117 (10th Cir. 1905). Accord, Murphy v. Mut. Life Ins. Co., 62 Idaho 362, 112 P.2d 993 (1941); King v. Hahn, 40 Idaho 555, 234 P. 937 (1925).

He suggests the following rule to cover this case.

"If again the first incompetent evidence is relevant, or though irrelevant is prejudice-arousing, but the adversary has failed to object or to move to strike out, where such an objection might apparently have avoided the harm, then the allowance of answering evidence should rest in the judge's discretion. He will weigh the probable influence of the first evidence, the time and distraction incident to answering it, and the possibility and effectiveness of an instruction to the jury to disregard it."[2]

We cannot say that the trial court abused its discretion in allowing the County to rebut Hobbs' self-serving evidence. We will not, therefore, depart from our rule that errors in the admission of evidence may only be reviewed on appeal in this Court if challenged below.[3]

■ As his 16th assignment of error, appellant objects to the giving of instruction no. 2, which is a correct instruction on impeachment by prior inconsistent statements. Appellant contends that there were no prior inconsistent statements. This is not accurate. On direct examination appellant testified that he had suffered no symptoms from the 1962 auto accident which had lasted until January, 1964, and, to support that assertion he said that he had gone to work again in July, 1963. His deposition gave a substantially different impression by qualifying the "return to work" statement and by laying out a number of chronic symptoms of which he had complained and which were substantially the same as those upon which he predicated his damage claim in this action. It is our opinion that the trial court committed no error in giving instruction no. 2.

■■ Appellant, in his 17th assignment of error, complains that the court erred in giving instruction no. 3 in that it blurred the common sense distinction between circumstantial and direct evidence. In his brief appellant only quotes from the 5th of five paragraphs of that instruction. It is elementary that instructions must be read in their entirety before they may be adjudged to be incorrect statements of the law.[4] The instruction is clear in its total context, and it does state a distinction between circumstantial and direct evidence. The instruction, in its entirety, states the rule that circumstantial evidence may stand on its own as proof.[5]

■ Assignments of error 18, 21, and 22 deal with instructions 7, 10, and 11 which concern the agency relationship necessary to impose vicarious liability on an employer. Instruction 7 requires that the employee, at the time that he commits the tort, be acting within the scope of his employment. Instruction 10 is to the same effect. Instruction 11 reads as follows:

"An employee is acting within the scope of his employment if he is engaged in the transaction of business which has been assigned to him by his employer or if he is doing anything which may reasonably be said to have been contemplated as a part of his employment. It is not necessary that an act or failure to act must have been expressly authorized by the employer to bring it within the scope of the employee's employment. Such conduct is within the scope of his employment if it occurs while the employee is engaged in the duties which he was employed to perform and relates to those duties. Conduct for the benefit of

2. C. McCormick, Handbook of the Law of Evidence, 133 (1954). It should be noted that both the *Warren Livestock* rule and that suggested by Professor McCormick presume that the answering evidence will be objected to as incompetent or irrelevant by the "door-opening" party's counsel at trial.

3. *E. g.*, Blue Note, Inc. v. Hopper, 85 Idaho 152, 377 P.2d 373 (1962); Fuchs v. Lloyd, 80 Idaho 114, 326 P.2d 381 (1958).

4. *E. g.*, Blaine v. Byers, 91 Idaho 665, 429 P.2d 397 (1967).

5. *See* State v. Farris, 48 Idaho 439, 282 P. 489 (1929).

the employer which is incidental to, customarily connected with or reasonably necessary for the performance of an authorized act is within the scope of the employee's employment."

The appellant cites the last sentence of instruction no. 11 in order to argue that the trial court demanded a too stringent standard of agency as a basis of liability in this case. The preceding two sentences in the 11th instruction are a concise paraphrase of his entire argument on this point.

We have examined the remainder of appellant's 28 assignments of error, and hold them to be without reversible error.

The judgment of the district court is affirmed. Costs to respondent.

McFADDEN, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.