519 P.2d 421

**F. Clair RINDLISBAKER et al.,
Plaintiffs-Respondents,**

v.

**Irene M. WILSON, Executrix of the Estate
of E. M. Wilson, Deceased, formerly dba
Wilson's Farm Service Company, et al., De-
fendants,**

and

**Farmore Distributing Co., Defendant-
Appellant.**

**No. 11127.**

Supreme Court of Idaho.

Feb. 11, 1974.

Rehearing Denied March 20, 1974.

Ben Peterson, Pocatello, R. Vern Kidwell, Holden, Holden, Kidwell, Hahn & Crapo, Idaho Falls, Richard C. Fields, Boise, for defendant-appellant.

Hugh C. Maguire, Jr., Maguire & Kisling, Dale W. Kisling, Pocatello, for plaintiffs-respondents.

BAKES, Justice.

Respondent F. Clair Rindlisbaker brought this action for damages against the manufacturer and distributor of a fertilizer applicator and against the fertilizer dealer who furnished the applicator to respondent for use in respondent's field.

In 1967 respondent's father, with whom respondent was a partner in a family farming partnership, called Wilson's Farm Service (hereinafter Wilson) and placed an order for anhydrous ammonia fertilizer. Wilson filled the order by sending an employee to the Rindlisbaker farm with a Farmore fertilizer applicator filled with anhydrous ammonia. The employee was instructed to place the applicator into operation.

The Farmore applicator delivered to the Rindlisbaker farm was manufactured for the purpose of applying liquid chemical fertilizer to the soil and consists of a 750-gallon fertilizer tank resting on a platform from which two folding steel wings extend approximately twenty feet on each side. The liquid fertilizer is pumped through the extended wings and injected into the earth through curved shanks which descend at regular intervals from each

wing. In order to allow the applicator to be transported on the highways, the extended wings fold upright at each side of the platform until they extend vertically. The wings are held in the vertical position by a retaining pin. From the vertical position the wings are lowered into an operational (horizontal) position by following three separate steps: (1) attaching a winch cable to the wing; (2) removing the retaining pin; and (3), gradually lowering the wing by operating the winch. If the pin is removed without the winch cable attached, it is possible for the 750-pound applicator wing to fall. The applicator was manufactured with only one winch and winch cable and had no warning signs attached indicating the proper method of lowering the wings and the attendant danger if the sequence was not followed.

As the Wilson employee was lowering the right applicator wing in preparation for placing the applicator into operation, respondent, attempting to be helpful, pulled the retaining pin on the left applicator wing. The evidence is conflicting at this point concerning whether or not the Wilson employee indicated to respondent that respondent should pull the pin. When the pin was pulled, the applicator wing fell on respondent, paralyzing him instantly from the waist down and rendering him a permanent paraplegic. At the time of the accident, respondent was 28 years old.

The basic applicator frame was manufactured by Ben Hunt & Sons, for appellant Farmore Distributing, apparently using a design developed by both Farmore and Ben Hunt. Farmore completed the applicator by installing the specified tanks, hoses, shanks, etc. The completed applicator was then, in this case, sold to Wilson for use in his farm service business.

Respondent, joined by his wife and three children, subsequently brought an action against Wilson, appellant Farmore Distributing, Ben Hunt & Sons, and Shell Oil Company. After a lengthy trial, a jury returned a verdict in favor of respondent F. Clair Rindlisbaker and his wife, Bonnie Rindlisbaker, against appellant Farmore and Wilson jointly and awarded the sum of $400,000 to respondent Rindlisbaker and $15,000 to his wife. After the trial court's denial of appellant's motions for a judgment notwithstanding the verdict and for a new trial, appellant brought this appeal. We will not discuss each of appellant's 36 assignments of error separately, but will consider them in groups according to the substantial questions raised. Benson v. Brady, 73 Idaho 553, 255 P.2d 710 (1953).

Appellant first contends that the trial court's action in permitting Bonnie Rindlisbaker to prosecute a separate claim for the loss of the "services" and "support" of her husband, F. Clair Rindlisbaker, was error. Appellant does not question a wife's right to recover damages for loss of consortium resulting from injury to her husband caused by a third person's negligence, but claims that Mrs. Rindlisbaker's complaint was for the "services" and "support" of Mr. Rindlisbaker and thus a duplication of Mr. Rindlisbaker's claim for "loss of wages." In respondents' amended complaint, page 13, paragraph II, Mrs. Rindlisbaker claimed that she "has suffered and will continue to suffer extreme mental anguish by reason of her husband's injuries and has been permanently deprived of the care, comfort, society, consortium, services, companionship, protection and support of her husband, F. Clair Rindlisbaker . . . . ."

An analysis of the complaint indicates that the substance of Mrs. Rindlisbaker's claim was for the loss of consortium, care, comfort, society, companionship, services and protection of her husband. Idaho has recognized the right of a wife to sue for loss of consortium caused by a negligent injury to her husband. Accordingly, that portion of the complaint was properly allowed. Nichols v. Sonneman, 91 Idaho 199, 418 P.2d 562 (1966). *See also* General Electric Co. v. Bush, 88 Nev. 360, 498 P.2d 366 (1972), and Annot., 36 A.L.R.3d 900 and supplement. Diaz v. Eli Lilly & Co., 302 N.E.2d 555 (Mass.1973).

Respondent concedes, and we agree, that if Mrs. Rindlisbaker's claim for support was for pecuniary support, it should not have been allowed in that it was redundant with Mr. Rindlisbaker's claim for loss of wages. Doggett v. Boiler Engineering and Supply Co., 93 Idaho 888, 477 P.2d 511 (1970). However, the word "support" was mentioned only in the amended complaint. Mrs. Rindlisbaker's testimony at the trial concerned only Mr. Rindlisbaker's inability to provide support in family matters such as discipline of the children, family activities, etc. She did not in any way testify concerning the loss of financial support. Mrs. Rindlisbaker's loss of the consortium, care, comfort, society, companionship, services and protection of her husband would easily justify an award of $15,000. Therefore, we cannot say that the inclusion of the word "support" in the amended complaint in any way misled the jury. Where there is substantial evidence to support the verdict of the jury, judgment will not be reversed on appeal by reason of errors or defects in proceedings which do not affect substantial rights of parties. IRCP Rule 61; Rosenberg v. Toetly, 94 Idaho 413, 489 P.2d 446 (1971). The trial court's action in permitting Mrs. Rindlisbaker's complaint to include the word "support" in her claim against appellant was harmless error.

Appellant next contends that the trial court erred in allowing the introduction into evidence of a covenant not to execute between Rindlisbaker and Wilson Farm Service, together with certain statements relative to the covenant, and the trial court's statement that Irene Wilson was a party only for technical reasons. Prior to trial, respondents settled with Irene Wilson, executrix of the estate of E. M. Wilson, for $50,000 and executed a "Covenant Not to Execute." At the start of the trial, the court informed the jury that Irene Wilson was only a party for technical reasons. During the course of the trial, when Mr. Rindlisbaker was testifying concerning his accumulated medical expenses, counsel

for Ben Hunt, one of the co-defendants, inquired of Mr. Rindlisbaker whether the bills had· been paid with money obtained from Wilson Farm Service under the terms of a settlement. Mr. Rindlisbaker responded in the affirmative. At that time the only objection made was made by counsel for respondent Rindlisbaker who objected on the basis that such testimony was irrelevant and immaterial to the issues before the court. Respondent's objection was overruled. On redirect, Mr. Rindlisbaker testified to the effect that the settlement was executed because the limit of Wilson's liability insurance was $50,000 and that Mr. Rindlisbaker in no way considered the $50,000 as full compensation for his injuries. Appellant Farmore objected to the explanation of respondent's reasons for executing the covenant and also to the introduction of the covenant into evidence.

Concerning the introduction of the covenant not to execute, appellant's first objection to the covenant was raised when it was offered into evidence. At that time, appellant objected on the ground that the covenant was self serving. We find no independent rule of law which states that statements which are self serving must be excluded.[1] Bell, Handbook of Evidence for the Idaho Lawyer, 2d Ed., at p. 129. In fact, most testimony is. self serving to some degree. An objection which was correctly overruled by the trial court on the ground stated cannot be considered on appeal on a different ground. State v. Pruett, 91 Idaho 537, 428 P.2d 43 (1967). Accordingly, there was no error in the trial court's ruling on the objection raised by appellant to the introduction of the covenant not to execute.

Appellant strenuously urges that the trial court's action in permitting Mr. Rindlisbaker to testify concerning the limits of the liability insurance held by E. M. Wilson and Mr. Rindlisbaker's reasons for executing the covenant was so prejudicial so as to necessitate a new trial. The area of inquiry into the settlement and terms

1. Notwithstanding Jackson v. Blue Flame Gas Co., 90 Idaho 393, 412 P.2d 418 (1966).

thereof was opened by appellant's co-defendant Ben Hunt. Appellant Farmore made no objection to the line of inquiry until respondent was allowed to explain that he did not consider the settlement full compensation for his injuries. The covenant would have been irrelevant to the issues of the case; however, it was made relevant by the inquiries of the co-defendant. Hobbs v. Ada County, 93 Idaho 443, 462 P.2d 742 (1969); Murphy v. Mutual Life Ins. Co., 62 Idaho 362, 112 P.2d 993 (1941). Respondent at that time had a right to explain to the jury that he did not consider the settlement full compensation for his injuries.

Respondent apparently concedes that the testimony concerning the limits on liability insurance and the court's statement to the jury that Irene Wilson was only a party for technical reasons were both erroneous, but contends that the errors were adequately cured by proper instructions to the jury. Assuming, but not deciding, that such testimony and statement by the court were error, they must be considered in light of the instructions given to the jury by the court. The pertinent instructions submitted to the jury were as follows:

"No. 12

"You are instructed that there has been testimony concerning a covenant between the plaintiffs and the defendant Irene M. Wilson, representing Wilson's Farm Service. You are further instructed that there has been testimony that the insurance limits available is $50,000.00. It is not the responsibility of any other defendant to ascertain insurance limits on the part of E. M. Wilson and it does not automatically follow that because of this policy limit the other defendants would be responsible for damages in excess of $50,000.00. By the same token, it does not mean that the plaintiffs are limited to $50,000.00 if the evidence justifies a larger award."

"No. 24

"You are instructed that Irene Wilson, as Executrix of the Estate of E. M. Wilson, deceased, formerly dba Wilson's Farm Service, is still a party to this proceeding and you may find all liability for damages, if any, sustained by the plaintiff, to be the responsibility of E. M. Wilson, or his agents."

"No. 16

"A defendant's liability is not measured by the amount of his insurance coverage, but by the full damages proximately caused by the acts of that defendant or his agents."

"No. 17

"Settlement on the part of one of several defendants cannot be construed in any manner as an indication of liability on the part of any defendant not participating in the settlement."

An error in the admission of evidence on the existence of the limits of liability insurance may be cured by proper instructions to the jury. Finck v. Hoskins, 94 Idaho 524, 492 P.2d 936 (1972). Similarly, an erroneous statement by the trial court may be cured by proper instruction to the jury. Feeney v. Harrison, 84 Idaho 236, 371 P.2d 15 (1962). That the instructions submitted in the instant case were understood and followed is evidenced by the jury's verdict wherein the liability of Wilson's Farm Service was co-extensive with that of Farmore, and the $50,000 settlement was allowed as a credit to both appellant and Wilson's Farm Service.[2] Thus, in view of the court's instructions submitted to the jury, we find that the above discussed statements, if error, were harmless.

The next group of appellant's contentions relate to the trial court's instructions to the jury on strict liability. The trial court instructed the jury as follows:

"No. 50

"In order for the rule of strict liability to be applicable, it is not necessary for

2. The verdict form submitted to the jury by the court provided for a $50,000 allowance for the settlement with Wilson's Farm Service.

the plaintiffs to prove that the manufacturer, distributor or supplier of the product which is claimed to be defective specifically authorized, or was actually aware of, the particular manner in which the product was being used at the time of the injurious occurrence. It is sufficient if the product was being used in the manner in which the manufacturer, distributor or supplier should have reasonably anticipated that it would be used and not in some abnormal manner."

## "No. 51

"A product may be defective, within the meaning of that term as used in the rule of strict liability, not only when it contains unsafe or defective materials or parts, but also if any part of its fundamental design exposes users or bystanders to an unreasonable risk of physical injury.

"A product may also be defective, even though it might be faultlessly made, if it is unreasonably dangerous to place it in the hands of a user without giving suitable and adequate warnings or instructions concerning the safe manner in which to use it."

## "No. 52

"The defendants, Ben Hunt & Sons and Farmore Distributing Company, are not required under the law so to create and deliver their product as to make it accident proof; however, they are liable to the plaintiffs for any injury suffered by them if the plaintiffs establish by a preponderance of the evidence all of the fact necessary to prove each of the following conditions:

"First: The defendants placed the fertilizer applicator in question on the market for use, and the defendants knew, or in the exercise of reasonable care should have known, that the particular fertilizer applicator would be used without inspection for defects in the particular part, mechanism or design which is claimed to have been defective;

"Second: The fertilizer applicator was defective in design or manufacture at the time it was placed on the market and delivered;

"Third: The plaintiff, Clair Rindlisbaker, was unaware of the claimed defect;

"Fourth: The claimed defect was a proximate cause of any such injury to the plaintiff, Clair Rindlisbaker, occurring while the fertilizer applicator was being used in the way and for the general purpose for which it was designed and intended, and

"Fifth: The defect, if it existed, made the fertilizer applicator unreasonably dangerous and unsafe for its intended use.

"An article is unreasonably dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordinary person who. uses it with the ordinary knowledge common to the community as to its characteristics."

## "No. 54

"The manufacturer and retailer or distributor of an article who places it on the market for use under circumstances where he knows that such article will be used without inspection for defects in the particular part, mechanism, or design which is claimed to have been defective, is liable for injuries proximately caused by defects in the manufacture or design of the article which caused it to be unreasonably dangerous and unsafe for its intended use and of which the user was not aware, provided the article was being used for the purpose for which it was designed and intended to be used.

"An article is unreasonably dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordinary person who uses it, with the ordinary knowledge common to the community as to its characteristics.

"The plaintiffs have the burden of establishing by a preponderance of the evidence all of the facts necessary to prove each of the foregoing conditions."

In the recent case of Shields v. Morton Chemical, 95 Idaho 674, 518 P.2d 857 (1974), this Court held that the concept of strict liability for products liability cases as embodied in the Restatement of Torts, Second, § 402A (1965), was a proper basis for liability in Idaho. Accordingly, we find no error in the court instructing the jury on strict liability.

The next issue presented, and one which was not presented to the court in Shields v. Morton Chemical, *supra,* is whether a defect in design, as opposed to a defect in manufacture, is within the scope of the rule enunciated above. Appellant urges that a distinction should be drawn between defective manufacture and defective design. However, we fail to see any logical reason to distinguish between the two. The risk to the user will be just as great with an unreasonably dangerous design defect as with a manufacturing defect. The California Court of Appeals, in ruling upon the same issue, stated in Thomas v. General Motors Corp., 13 Cal. App.3d 81, 91 Cal.Rptr. 301 (1971):

> "Strict liability encompasses both design and manufacture. (Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 64, 27 Cal.Rptr. 697, 377 P.2d 897.) There is no rational distinction between design and manufacture, since a product may be equally defective and dangerous if its design subjects protected persons to unreasonable risk as if its manufacture does so. [Omitting citations]. 'A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.' (Rest. 2d Torts, §

398; Pike v. Frank G. Hough Co., *supra,* 2 Cal.3d 465, 470, 85 Cal.Rptr. 629, 632, 467 P.2d 229, 232.)" 91 Cal.Rptr. at 305.

In the instant case, evidence was produced at trial from which a jury could reasonably conclude that there was a defect in the design of the applicator. Accordingly, the trial court's instruction # 51 (set forth above) concerning design defects was proper. Greenman v. Yuba Power Products, Inc., *supra;* Wright v. Massey-Harris, Inc., 68 Ill.App.2d 70, 215 N.E.2d 465 (1966); Berkebile v. Brantly Helicopter Corp., 219 Pa.Super. 479, 281 A.2d 707 (1971).

We now turn to appellant's contention that the court erred in instructing the jury on appellant's duty to warn. It is clear that a failure to warn may be used as a basis for a strict liability case.[3] Comment H, Restatement Torts 2d, § 402A, provides that where the defendant has "reason to anticipate that danger may result from a particular use" of his product and he fails to give adequate warnings of such a danger, "a product sold without such warning is in a defective condition."[4] This rule, however, is limited to situations wherein the danger is not obvious.[5] In the instant case, a factual question as to the obviousness of the danger involved in the applicator wing lowering procedures was present. A jury could have reasonably found that the evidence in this case indicated that the danger of a "falling applicator wing" was not obvious. Accordingly, the trial court's instruction to the jury on appellant's duty to warn was not error. Ewer v. Goodyear Tire & Rubber Co., 4 Wash.App. 152, 480 P.2d 260 (1971).

Appellant next contends that the trial court erred in giving instructions No. 6 and No. 53 to the jury in that they instructed the jury that if F. Clair Rindlis-

3. Canifax v. Hercules Powder Co., 237 Cal. App.2d 44, 46 Cal.Rptr. 552 (1965); *see also* Restatement 2d, Torts, § 402A (h, j); 23 S.W. L.J. 256, Noel, Products Defective Because of Inadequate Directions or Warnings, and American Law of Products Liability, 1973 Supplement, ¶ 5A:7.

4. Restatement 2d, Torts, § 402A.

5. Noel, Products Defective Because of Inadequate Directions or Warnings, *supra.*

baker, rather than a reasonable man, determined the danger involved in using the fertilizer applicator, there could be no recovery. Instruction No. 53 provides as follows:

"No. 53

"That the manufacturer, distributor and supplier of the fertilizer applicator involved in this litigation are under a duty to give adequate warnings and instructions as to the use of the same as to any dangers which are reasonably foreseeable and are known or should have been known to them. Failure to give such instructions or warnings constitutes negligence unless the danger involved was obvious and the peril appreciated by plaintiff."

Respondent concedes, and we agree, that such an instruction, taken literally, was an incorrect statement of the law since contributory negligence in a tort negligence action is based upon a reasonable man standard, not a particular plaintiff's action. Meissner et ux v. Smith & Wetystur, 94 Idaho 563, 494 P.2d 567 (1972). Instruction No. 53, however, was given in the context of strict liability and as such correctly stated the law governing the question since it is generally agreed that only what is commonly known in negligence tort law as "assumption of the risk" is a defense to a strict liability action, and that "assumption of the risk" involves the subjective actions of a particular plaintiff. Shields v. Morton Chemical, *supra*. *See also* Restatement Torts 2d, § 402A (n); Products Liability, Frumer and Friedman, § 16.01(3) (1972); 13 A.L.R.3d 1057, § 11. In view of the fact that instruction No. 53 was given within a group of instructions relating to strict liability (Instructions Nos. 50, 51, 52, 54), we find it difficult to see how the jury was misled by the word "negligence" such as would prejudice the rights of appellant. As stated in Blaine v. Byers, 91 Idaho 665, at page 674, 429 P.2d 397, at page 406 (1961):

"The jury will be presumed to have considered the instructions as a whole; consequently, on appeal, jury instructions will not be considered piecemeal. [Cases cited]."

*See also* Davis v. Bushnell, 93 Idaho 528, 465 P.2d 652 (1970). We find no reversible error in Instruction No. 53.

Instruction No. 6 provides as follows:

"No. 6

"You are instructed that the defendants plead and rely upon contributory negligence of the Plaintiff.

"Contributory negligence is defined as negligence on the part of a person seeking damages which negligence concurring with the negligence of another aids in proximately causing the damage of which the claimants thereafter complain. One who is guilty of contributory negligence may not recover from another for the damages suffered.

"However, in this action you are instructed that contributory negligence is if Clair Rindlisbaker discovered the dangerous condition of the machine, if any, and continued to use the product after learning of the dangerous condition. If you so determine, then you must find for the defendants. Also, if the danger is so obvious that a reasonable man should realize such danger, then to use the machine is contributory negligence."

The instruction advised the jury that contributory negligence was a bar to recovery on the claim and that contributory negligence consisted of Clair Rindlisbaker's continued use of the product after discovering the dangerous condition of the applicator, or if a reasonable man would have realized the danger. Although it would have been better if the instruction had not referred to Clair Rindlisbaker's discovery of the dangerous condition of the fertilizer machine, such a reference, taking the instruction as a whole, did not sufficiently

taint the instruction so as to create prejudicial error.

 The remaining issue to be discussed concerns the jury's award of damages. Appellant urges that the trial court erroneously allowed testimony as to a projected future operation not yet in existence and that the jury's verdict was a result of passion and prejudice. Over appellant's objections that the evidence was speculative, conjectural and without a proper foundation, the trial court allowed Mr. Rindlisbaker to testify concerning a projected future range operation. The court also permitted testimony that Mr. Rindlisbaker was going to purchase the ranch from his father in two years and that they were going to convert hay ground into pasture ground and run approximately four hundred head of cattle on the ranch. Mr. Rindlisbaker also testified that they would make approximately $35–40 per head of cattle. This court has explicitly stated that damages for loss of earnings or profits must be shown with reasonable certainty and that compensatory awards based upon speculation or conjecture will not be allowed. Jolley v. Puregro Co., 94 Idaho 702, 496 P.2d 939 (1972), and cases cited therein. The testimony elicited in the instant case concerning projected future winter range operation is violative of the rule set forth above. At the time of the accident, respondent owned only 40 head of cattle himself and was marketing with his father only 187 head annually. Respondent and his father had not entered into any lease arrangement for the winter rangeland and had taken no action to convert hay ground into pasture ground. Additionally, the evidence concerning respondent's intent to purchase the ranch shows little more than a bare intent. This evidence was too speculative to be admissible as proof of lost future earnings. McCormack on Damages, p. 309, § 87 (1935); 45 A.L.R. 345, 381, 419; Mathew Bender, Personal Injury, § 304 [4] [c] [e].

 The problem which now arises is to determine what remedial action is required. This Court has often stated that the trial court has the primary responsibility to weigh the evidence introduced during a trial and determine if the verdict of the jury can be reasonably justified. Mendenhall v. MacGregor Triangle Co., 83 Idaho 145, 352 P.2d 860 (1961). We have also approved the use by the trial courts of a remittitur as an alternative to a new trial where excessive damages are involved. In Checketts v. Bowman, 70 Idaho 463, 220 P.2d 682 (1950),[6] this Court, in addressing itself to the question of whether a remittitur could be used as an alternative to a new trial, stated:

> "New trials necessarily occasion delay, hardship and expense to the parties. No harm can arise from affording an opportunity to the plaintiff to avoid a new trial and obtain an immediate judgment for the lesser amount." 70 Idaho at 468, 220 P.2d at 684.

As the trial court can evaluate an excessive verdict from the standpoint of damages and order a remittitur as an alternative to a new trial, Mendenhall v. MacGregor Triangle Co., *supra*; *see also* Annot., 70 A.L.R.2d 935, § 4[d], at p. 955 (1960), we see no logical reason why it cannot, if it deems appropriate, evaluate the adverse effect, if any, of the speculative evidence relating to damages which was improperly admitted at the trial. McCormick, Handbook on the Law of Damages, § 19, at p. 81 (1935). We are not finding under the facts of this case a verdict of $415,000.00 is excessive, but only that the improperly admitted evidence relating to future earnings may warrant remedial action consistent with this opinion.

 The cause is remanded with directions to the district court to re-examine the record in view of this opinion and take whichever of the following courses of action the court deems appropriate, depending upon whether or not, in the opin-

6. Overruled on the limit of damages in Meissner v. Smith, 94 Idaho 563, 494 P.2d 567 (1972).

ion of the district court, prejudice resulted from the admission into evidence of the speculative evidence relating to damages. If the court determines that no prejudice to appellant resulted from the admission into evidence of the speculative testimony relating to damages, the judgment previously entered should stand. If the court determines that prejudice resulted from the admission into evidence of the speculative evidence relating to damages, the court may either (1) order a remittitur of that portion of the judgment which the court determines to be the product of the improperly admitted evidence relating to damages; (2) order a remittitur, as stated in (1) above, allowing respondent the alternative of either accepting the remittitur in writing within twenty days or having a new trial on the issue of damages; or (3) grant a new trial on the issue of damages. In making this determination the trial court should consider the relationship between the speculative evidence relating to damages and the entire course of the trial, particularly whether or not counsel for respondent in oral argument to the jury dwelt upon the profits to be made from the future farming operations, or whether or not it was only mentioned at the time the evidence was admitted.

■ If on remand the trial court does not grant relief against the judgment or merely orders a remittitur of a portion of the judgment, then interest on the judgment shall run from the date of the original judgment in the principal amount of the judgment (less a remittitur, if any). If a new trial is granted, and the original judgment set aside, then interest shall not run until a new judgment is entered.

Remanded for further proceedings. Each party to bear his own costs.

SHEPARD, C. J., and DONALDSON, J., concur.

McQUADE, Justice (specially concurring).

I concur in the reasoning of the majority opinion, but it must be emphasized that the majority specifically finds that the judgment of $415,000 was not excessive. The action is only remanded to determine whether certain evidence concerning future earnings had an impact on the verdict. Upon remand the trial court can properly find that there was sufficient evidence to support the verdict regardless of the "speculative" evidence.

McFADDEN, Justice (concurring in part and dissenting in part).

I concur in the majority opinion as written, except insofar as it remands the case to the trial court for its determination of the prejudicial effect of the improperly admitted evidence. It is my conclusion that the case should be remanded to the trial court for a new trial solely on the issue of damages to be awarded to respondent F. Clair Rindlisbaker.

The majority opinion holds that the evidence adduced by respondent concerning the proposed winter range cattle operation was too speculative to be admissible as proof of loss of future earnings. After that determination is made, it is my conclusion that it is the obligation of this court to make the determination as to whether the admission into evidence of this testimony was prejudicial or not, and that remanding this issue back to the trial court for determination is an abdication of the responsibility of this court.

In this case the jury returned a general verdict insofar as respondent F. Clair Rindlisbaker is concerned and for a trial court to attempt to determine the effect that this improperly admitted evidence had on the jury and its verdict would be an exercise in futility. When a general verdict is returned it is impossible to later evaluate the effect any particular bit of evidence could have on the ultimate amount of damages found by such jury. The admission into evidence of this testimony was either prejudicial error or harmless error, and that decision is to be made by this court.

This problem is not related to the question of the granting of a new trial condi-

tioned upon the remission of a sum which the trial court has determined to be excessive in that the record before the trial court can only sustain a certain amount to be awarded as damages. See, Checketts v. Bowman, 70 Idaho 463, 220 P.2d 682 (1950), wherein this court stated:

> "However, in a case such as this, where no other ground for new trial is found than that the evidence does not support the amount of the verdict, and it does not appear to the trial judge that the amount was influenced by passion or prejudice, or other irregularity, which may be avoided on a new trial, then he should go further and condition the new trial on a refusal of the prevailing party to remit that part of the verdict which in his judgment is excessive." 70 Idaho at 467, 468, 220 P.2d at 684.

Blaine v. Byers, 91 Idaho 665, 429 P.2d 397 (1967); Bratton v. Slininger, 93 Idaho 248, 460 P.2d 383 (1969). And this is not the type of case where a judgment contains separable items, some of which are proper and some improper, in which it would be proper to permit a party in whose favor a judgment has been returned to avoid the granting of a new trial on account of error affecting only a part thereof, by entering a remittitur as to the erroneous part. See, Annot. 135 A.L.R. 1186 (1941).

The jury in assessing the damages to be awarded respondent F. Clair Rindlisbaker had numerous elements to evaluate, i. e., medical expense, past and future, pain and suffering, past and future, loss of earnings, past and future, life expectancy and other items of damages generally accepted in cases of this nature. These items the jury considered in arriving at its verdict in his favor are impossible to itemize when there is a general verdict rendered. There is no way the trial court, or this court, could evaluate the effect, if any, of the improperly admitted evidence on the jury when it considered the issue as to Rindlisbaker's damages for personal injury. For that reason it is my conclusion that the error in

admitting the testimony as to prospective earnings from the proposed winter range cattle operation was prejudicial to the appellant in this case and a new trial should be granted on the issue of damages suffered by respondent F. Clair Rindlisbaker. Valley Transp. System v. Reinartz, 67 Ariz. 380, 197 P.2d 269 (1948); McAlister v. Carl, 233 Md. 446, 197 A.2d 140 (1964).