979 P.2d 107

**Hollie SLAATHAUG and Karen Slaathaug, husband and wife, Plaintiffs–Respondents,**

v.

**ALLSTATE INSURANCE COMPANY, a foreign corporation, Defendant–Appellant.**

No. 23823.

Supreme Court of Idaho, Boise, January, 1999 Term.

March 31, 1999.

Rehearing Denied June 9, 1999.

Lynch & Associates, Boise, for appellant. James B. Lynch argued.

Ringert, Clark, Chtd., Boise, for respondent. Patrick D. Furey argued.

TROUT, Chief Justice

Allstate Insurance Company (Allstate) appeals from the district judge's (1) grant of Hollie and Karen Slaathaugs' (the Slaathaugs) motion for a new trial and (2) denial of Allstate's motion to alter or amend judgment.

## I.

## BACKGROUND

A fire severely damaged the Slaathaugs' home in September 1992. The Slaathaugs filed a claim with their insurer, Allstate. Allstate maintained a list of recommended contractors it believed competent to complete the repairs. As an incentive for the Slaathaugs to choose a contractor from the list, Allstate promised to guarantee the work for three years. After receiving bids, the Slaathaugs hired General Services, owned by Paul Bushman (Bushman). Bushman was on the list of recommended contractors.

The Slaathaugs were able to move back into their home in December 1992. In early 1993, their basement flooded causing the

house to fill with odors of charred wood and smoke. The Slaathaugs investigated by removing sheetrock in their basement. They discovered that their home had not been repaired to its pre-fire condition. Instead, Bushman had merely scraped, sealed, and covered-up charred portions of the framing, floor joists, and flooring. The Slaathaugs complained to Allstate who referred them back to Bushman. In mid–1994, the problem was still not cured, and the Slaathaugs filed a complaint against Allstate and Timothy Steger (Steger), an adjuster for Allstate. The Slaathaugs alleged breach of contract, bad faith, and fraud. The Slaathaugs claim that Allstate intentionally caused Bushman to underbid the project, grossly underestimating the cost and materials needed to restore their home to its pre-fire condition. In September 1996, the Slaathaugs filed a second amended complaint requesting punitive damages.

At the trial's outset, the trial court granted the Slaathaugs' motion to exclude fact witnesses under I.R.E. 615. As parties to the litigation, the Slaathaugs, Steger, and Allstate's designated corporate representative, William Ball (Ball), were excepted from the order. The trial spanned thirteen days, and the jury returned a verdict for the Slaathaugs on the breach of contract claim only and awarded $17,500 in compensatory damages. The jury returned a verdict in favor of Steger on the fraud claim. After the trial court entered judgment, Allstate filed a motion to alter or amend judgment under I.R.C.P. 59(e) claiming the evidence did not support the $17,500 damage award and that the Slaathaugs should only receive $5,364.

Both parties filed motions for costs and attorney fees. Allstate submitted its billing records which indicated that during the trial its attorney obtained daily transcripts and provided those transcripts to defense witness James Hunter (Hunter), a property claims manager for Allstate. The Slaathaugs responded by filing a motion for a new trial limited to their tort claim that Allstate breached its duty of good faith and fair dealing. In its second memorandum opposing

the Slaathaugs' motion for a new trial, Allstate's counsel admitted he also provided trial transcripts to Richard Stewart, another defense witness. In response, the Slaathaugs filed a motion for a new trial under I.R.C.P. 59(a)(1). Ruling on the post-trial motions, the trial court (1) denied Allstate's motion to alter or amend judgment, (2) granted the Slaathaugs' motion for a new trial on the tort claim, and (3) postponed any decision on costs and attorney fees until suit was "fully concluded." Allstate appeals.

## II.

## DISCUSSION

### A. Motion to Alter or Amend Judgment.

■ Allstate argues that the trial court erred in denying its motion to alter or amend judgment under I.R.C.P. 59(e). As a means to circumvent an appeal, Rule 59(e) provides a trial court a mechanism to correct legal and factual errors occurring in proceedings before it. *First Security Bank v. Neibaur,* 98 Idaho 598, 603, 570 P.2d 276, 281 (1977). So long as a motion to alter or amend is made within the two-week time constraint of the rule, notions of finality are not disturbed. *Id.* This Court will review an order denying a motion to alter or amend judgment for an abuse of discretion. *See Lowe v. Lym,* 103 Idaho 259, 263, 646 P.2d 1030, 1034 (Ct.App. 1982). So long as the trial court recognized the matter as discretionary, acted within the outer boundaries of the court's discretion, and reached its conclusion through an exercise of reason, this Court will not disturb the decision on appeal. *See Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ Allstate argues that the evidence presented to the jury does not support an award for $17,500 on the breach of contract claim. The $17,500 figure will allow the Slaathaugs to replace all the sills [1] in their home. Since the Slaathaugs will be forced to move out of their home while the repairs are made, the award is also large enough to cover resulting living expenses. Allstate argues that the

---

1. When a home is built, sills are attached to the top of the foundation. Those sills, in turn, provide support for the remainder of the construction.

record provides no evidence that all of the sills need to be replaced. Moreover, the record does not support a damage award to cover living expenses incurred while the repairs are completed. Thus, the trial court should have amended the judgment to award only $5,364.

In support of this argument, Allstate submitted to the trial court an affidavit from Maurice Gregory (Gregory), an expert who had testified at trial. In that affidavit Gregory asserted that only a small portion of the sills could have been charred based upon the evidence presented at trial. The cost of replacing those sills would be just over $5,000. The Slaathaugs filed a motion to strike the affidavit as irrelevant, arguing that Allstate was attempting to present new evidence in support of its motions. The trial court granted the motion to strike, and Allstate has not appealed that ruling.

Gregory's own trial testimony supports the damage award. On direct examination Gregory testified that to replace the sills it would cost $66.33 per lineal foot plus the cost to remove and then replace "finishes." That cost includes a $22.00 mark-up to cover the contractor's profit and other costs. Gregory testified that to replace the sills, a contractor would jack the house up in stages, replacing twenty to thirty feet at a time. Counsel for Allstate questioned Gregory further about those costs:

Q   Now, if somebody decided to replace a given number of lineal feet of sill, they would simply multiply that number of feet by this $44 price plus profit; is that right?

A   Yes, I would.

Q   If you wanted to replace the sill, for some reason, all the way around the house, would you, then, just continue to multiply the lineal feet times the price per foot?

A   Yes, you would, and, of course, this does not include any removal of finishes or replacement of finishes.

On cross-examination, counsel for the Slaathaugs questioned Gregory, without objection, as to what it would cost to replace all of the sills. Gregory answered "For the sill plates, to remove and replace, would be approximately $11,440. To replace—to remove and replace the sheetrock would be approxi-

mately $855. And you're going to have to paint that sheetrock...." Gregory concluded that $12,500 would be a fair estimate and that it would take around thirty days to complete the work.

The trial court properly noted that Gregory never stated that only a portion of the sills needed replacement. Further, Allstate never made that argument to the jury. The trial court ruled that it could not "conclude that there is insufficient evidence to support the award for $12,500 to replace the sills." The court also recognized that because the repairs would take thirty days and the house would be uninhabitable the jury "apparently included the $5,000 for the plaintiffs' expenses to live elsewhere while the sills were being replaced in their home."

█   In light of the above, Allstate has failed to establish that the trial court abused its discretion in denying Allstate's motion.

## B.   *Motion for a New Trial*

█   Rule 59(a)(1) allows a trial court to grant a new trial "on all or part of the issues" in an action where there was an "[i]rregularity in the proceedings of the court, jury or adverse party . . . by which either party was prevented from having a fair trial." I.R.C.P. 59(a)(1). This Court will review an order granting a party's motion for a new trial for an abuse of discretion.

Early in the proceedings, the trial court granted the Slaathaugs' motion to amend their complaint to add a request for punitive damages. In its ruling the trial court stated: "Whether or not the plaintiffs can prove their allegations will depend largely on the jury's assessment of the credibility of Messrs. Steger and Bushman, and the inferences the jury is willing to draw from the evidence." Consistent with that ruling, the Slaathaugs filed a motion to exclude all non-party fact witnesses under I.R.E. 615. Rule 615 provides:

At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize ex-

clusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a crime victim whose exclusion is prohibited under Article I, Section 22 of the Idaho constitution.

I.R.E. 615. The trial court ruled from the bench stating: "I'll grant the motion to exclude fact witnesses while testimony is going on. That will not apply to Mr. Ball, Mr. Steger, or the Slaathaugs, since they are parties or representatives of parties."

During trial, Allstate's counsel provided trial transcripts to witnesses subject to the exclusion order. Unfortunately, the Slaathaugs did not discover this until after trial when both parties filed motions for costs and attorney fees. However, the Slaathaugs discovered the conduct within the fourteen day window to file the motion for a new trial. *See* I.R.C.P. 59(b). The trial court found that Allstate intentionally violated the exclusion order and granted the Slaathaugs' motion for a new trial.

In its decision, the court noted that there are generally four methods of curing a violation of an exclusion order: (1) citing the violating witness for contempt, (2) permitting the injured party to comment on the violation, (3) refusing to let the violating witness testify, and (4) striking the violating witness' testimony. *See State v. Danson,* 113 Idaho 746, 747 P.2d 768 (Ct.App.1987). Because the violation was not revealed until after the jury returned its verdict, the court reasoned that none of the above remedies would cure Allstate's violation. The court noted: "The prejudice to the Plaintiffs is difficult, if not impossible, to measure because there is no way of knowing what the testimony would have been had the violation not occurred." Ordering a new trial provides a more suitable remedy and serves as a deterrent "to discourage future violations of orders excluding witnesses."

Allstate argues that the trial court erred in granting the motion for a new trial for the reasons set out below.

### 1. I.R.E. 615

■ Allstate complains that the trial court erred in granting the motion because Allstate did not violate the exclusion order in the first instance. While it is undisputed that Allstate provided transcripts to witnesses subject to the exclusion order, Allstate asserts that it did not violate the order since no witnesses actually "heard" the testimony. The order did not prohibit witnesses from reading transcripts of testimony from other witnesses. Consequently, the trial court had no basis to grant the motion for a new trial.

The trial court properly disregarded this argument noting that the purpose of an exclusion order is to help ensure that a witness' testimony is not tainted. As the trial court stated, "[i]f witnesses do not hear the testimony given by other witnesses, there is less likelihood that they will shape their testimony to conform with or rebut the testimony of others." The trial court further reasoned:

> Any person of common intelligence would know that an order preventing witnesses from being present to hear other testimony also prevents them from reading the transcripts of that testimony. Obviously it is not the act of "hearing" that the order is intended to prohibit. It is intended to prohibit witnesses from learning of the details of other testimony before those witnesses complete their testimony during the trial.

While the order in this case did not specifically instruct defense counsel not to provide trial transcripts to witnesses subject to the order, the order was granted on a motion under I.R.E. 615. The purpose of the rule is clear, to prevent witnesses from molding their own testimony, intentionally or inadvertently, to conform with or rebut testimony of other witnesses. *See State v. Ralls,* 111 Idaho 485, 487, 725 P.2d 190, 192 (Ct.App.1986). To allow a party to provide daily trial transcripts to a witness subject to an exclusion order would unmistakably subvert that purpose. Consequently, the trial court did not err in finding that Allstate violated the order despite Allstate's creative argument that no witness subject to the order "heard" the testimony of another witness.

## 2. Prejudice

Allstate contends, regardless of whether it violated the exclusion order, that because the trial court failed to make a finding that a different outcome was likely on re-trial, it abused its discretion in granting the motion. In support of this argument, Allstate relies on *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397 (1967); *Soria v. Sierra Pacific Airlines*, 111 Idaho 594, 726 P.2d 706 (1986); and *Robertson v. Richards*, 115 Idaho 628, 769 P.2d 505 (1989). Both *Blaine* and *Richards* dealt with the issue of whether the evidence presented at trial was sufficient to justify the verdict under I.R.C.P. 59(a)(6). *Blaine*, 91 Idaho at 671, 429 P.2d at 403; *Richards*, 115 Idaho at 632, 769 P.2d at 509. In *Soria* the issue was whether the trial court should have granted a motion for a new trial under I.R.C.P. 59(a)(1) based upon an allegedly erroneous evidentiary ruling, that is, whether an erroneous evidentiary ruling denied the losing party a fair trial.[2] *Soria*, 111 Idaho at 608, 726 P.2d at 718.

The Slaathaugs' motion for a new trial, however, is based upon Allstate's misconduct. The issue before the trial court was not simply whether the evidence justified the jury verdict or whether a prior evidentiary ruling denied a party a fair trial. Rather, the issue is whether Allstate's misconduct denied the Slaathaugs a fair trial. In a similar case, this Court stated "[I]n Idaho, it is definitely not the case that the losing party has the double burden of showing both that a . . . violation has occurred *and* that 'actual prejudice' has resulted." *Rueth v. State*, 100 Idaho 203, 208, 596 P.2d 75, 80 (1979). In *Rueth* the judge improperly communicated with the jury in violation of I.R.C.P. 51(b). To determine whether the losing party should be granted a new trial, this Court set out a four step deliberative process.

(1) It is for the losing party, in the first instance, to show that there was some communication off the record and not in open court. (2) The burden then shifts to the winning party to show what the com-

munication was. If he cannot show what it was, the verdict must be set aside. (3) If he can show what it was but it appears to have been of such character that it *may* have affected the jury, then the verdict must be set aside. (4) Only if it is made clearly to appear that the communication *could not have had any effect*, can the verdict be allowed to stand.

*Id.* at 209, 596 P.2d at 81.

This Court adopted that four prong analysis in determining irregularities in the trial proceedings were sufficient to warrant granting a new trial under I.R.C.P. 59(a)(1). *Hinman v. Morrison–Knudsen Co.*, 115 Idaho 869, 771 P.2d 533 (1989). In *Hinman* the jury requested copies of documents presented at trial to assist it in deliberations. *Id.* at 871, 771 P.2d at 535. The bailiff improperly denied the request, and the judge was never informed. *Id.* Once discovered, the losing party filed a motion for a new trial under I.R.C.P. 59(a)(1) alleging that irregularities in the proceeding denied a fair trial. *Id.* at 870, 771 P.2d at 534. The trial judge stated that had he been aware of the request he would have made an effort to grant it. *Id.* On review of the trial court's decision ordering a new trial, this Court cited *Rueth* and applied the four prong test. After eliminating the first three prongs, this Court stated: "[W]e are unable to disagree with the trial court, and cannot hold that plaintiff was *not* prejudiced by the misconduct of the bailiff." *Id.* at 872, 771 P.2d at 536.

Consequently, where a motion for a new trial under I.R.C.P. 59(a)(1) is based upon misconduct, the moving party has only the burden to establish that the misconduct occurred. The party opposing the motion must then establish that the conduct could not have affected the outcome of the trial. Requiring Allstate to establish lack of prejudice makes even more sense in this case. It was Allstate who intentionally violated the order and committed the misconduct, not the judge or bailiff. Only Allstate knew what transcripts it provided in violation of the

---

**2.** Rule 59(a)(1) provides two bases for granting a new trial; (1) irregularity in the proceedings (as in this case) resulting in an unfair trial and (2) an order of the court or abuse of discretion resulting

in an unfair trial. The motion for a new trial in *Soria* appears to have been based on the latter. *Soria*, 111 Idaho at 608, n. 13, 726 P.2d at 718.

order. Allstate was in the best position to present evidence of prejudice or lack thereof. Accordingly, once the Slaathaugs established that Allstate provided transcripts to witnesses subject to the exclusion order, the burden shifted to Allstate to show the content of the transcripts provided and that the violation could not have had any effect on the verdict. Otherwise prejudice is presumed.

■ The Slaathaugs established that Allstate provided transcripts to witnesses subject to the exclusion order. Allstate failed to clearly establish the violation had no effect. It is apparent from the trial court's order granting the new trial that the trial judge understood that he had discretion in determining whether to grant the motion. It appears from the record that the trial court acted within the boundaries of its discretion and consistently with the applicable legal standards, reaching its decision through an exercise of reason. Therefore the trial court did not abuse its discretion when granting the Slaathaugs' motion for a new trial.

## C. *Attorney Fees on Appeal*

The Slaathaugs request attorney fees incurred in defending this appeal pursuant to I.C. § 41–1839 and I.C. § 12–121. Section 41–1839(4) states that Idaho Code sections 12–123 and 41–1839 "provide the exclusive remedy for the award of statutory attorney's fees" in this case and, consequently, precludes us from considering the Slaathaugs' request under § 12–121.

■ When an insurer fails to tender the amount justly due under an insurance policy within thirty days after receiving proof of loss, I.C. § 41–1839(1) mandates an award of reasonable attorney fees to the insured. To be entitled to such an award, consequently, an insured must prevail. *See Manduca Datsun, Inc. v. Universal Underwriters Ins.*, 106 Idaho 163, 169, 676 P.2d 1274, 1280 (Ct.App. 1984) (citing *Halliday v. Farmers Ins. Exch.*, 89 Idaho 293, 404 P.2d 634 (1965)). However, the insured need not obtain a verdict for the full amount requested. The insured need only be awarded an amount greater than that tendered by the insurer. I.C. §§ 41–1839(1), (2); *see also Halliday*, 89 Idaho at 301, 404 P.2d at 638–39.

■ The jury returned a verdict for the Slaathaugs on their claim for breach of contract. The Slaathaugs filed a motion for attorney fees under § 41–1839. Because the trial court granted the Slaathaugs' motion for a new trial, it properly deferred any decision as to costs and attorney fees until the lawsuit is fully concluded. *See Bear Island Water Ass'n Inc. v. Brown*, 125 Idaho 717, 726, 874 P.2d 528, 537 (1994). Consequently, there have been no findings as to whether § 41–1839(1) mandated an award of fees in the litigation below. Absent such a finding, it would be premature to award fees under this section on appeal. Whether the Slaathaugs are entitled to attorney fees below will determine whether they are entitled to fees for defending this appeal. *Cf. J.R. Simplot Co. v. Enviro–Clear Co., Inc.*, —— Idaho ——, 970 P.2d 980 (1998) (remanding a case for a new trial and holding a request for attorney fees on appeal under § 12–120(3) to be premature since neither party could have yet prevailed).

■ Section 41–1839(4) also provides a basis for an award of attorney fees to the insured or the insurer when a court finds that the case was "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 41–1839(4). Regardless of whether further proceedings are pending in the trial court, we may award attorney fees under this subsection. *Cf. Collins v. Jones*, 131 Idaho 556, 560, 961 P.2d 647, 651 (1998) (awarding attorney fees on appeal where respondent frivolously challenged trial court's decision ordering a new trial). However, this Court will not award attorney fees on appeal unless "all claims brought or all defenses asserted" meet the criteria above. *Chapple v. Madison County Officials*, 132 Idaho 76, 81, 967 P.2d 278, 283 (1998) (quoting *Management Catalysts v. Turbo West Corpac, Inc.*, 119 Idaho 626, 630, 809 P.2d 487, 491 (1991)). While Allstate failed to provide any support for a number of its arguments on appeal, because of the uncertainty surrounding I.R.C.P. 59(a)(1), we cannot say that Allstate brought and pursued this appeal, as a whole, frivolously or without foundation.

712

III.

## CONCLUSION

 Although Allstate raised a number of other issues in its brief, it failed to support its position with any argument or authority. Consequently, we will not address them. *See State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (citing I.A.R. 35). Therefore, for the reasons set out above, we affirm the decision of the trial court. We award the Slaathaugs costs, but not attorney fees, on appeal pursuant to I.A.R. 40.

Justices SILAK, WALTERS, KIDWELL and Justice Pro Tem WOODLAND, CONCUR.